## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| M.F., individually and on behalf of minor child, J.C.M., an individual with a disability, | Case No.  1:23cv2308 |
| Plaintiffs, | JUDGE PAMELA A. BARKER |
| -vs- | |
| CLEVELAND METROPOLITAN SCHOOL DISTRICT, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Currently pending before this Court are: (1) the Motion of Plaintiff M.F., individually and on behalf of minor child J.C.M, an individual with a disability ("Plaintiff" or "M.F.") to Strike Portions of Defendant Cleveland Metropolitan School District's ("CMSD") Answer (Doc. No. 11); (2) Third-Party Defendant Cuddy Law Firm, P.L.L.C's ("Cuddy") Motion to Strike/Dismiss CMSD's Third-Party Complaint (Doc. No. 10); and (3) Third-Party Defendant Alia Green's ("Green") Motion to Join Cuddy's Motion to Strike/Dismiss CMSD's Third-Party Complaint (Doc. No. 21). Defendant/Third-Party Plaintiff CMSD filed a Brief in Opposition to each of these Motions.  (Doc. Nos. 16, 19, 22.)   Third-Party Defendants Cuddy and Green filed Reply Briefs to CMSD's Oppositions to each of their respective Motions.  (Doc. Nos. 20, 23.)  All three Motions are now ripe for a decision.

For the reasons set forth herein, M.F.'s Motion to Strike Portions of Defendant CMSD's Answer (Doc. No. 11) is DENIED.  Cuddy's Motion to Strike/Dismiss CMSD's Third-Party Complaint (Doc. No. 10) is DENIED.  Green's Motion to Join Cuddy's Motion to Strike/Dismiss (Doc. No. 21) is DENIED as moot.  The Court SEVERS CMSD's Third-Party Complaint from this

action and ORDERS CMSD to file a new and separate complaint that sets forth its claims against Cuddy and Green and identify or delineate it as related to this case within fourteen days of this Opinion for purposes of being consolidated with the present action.

## I.    Relevant[1] Factual and Procedural Background[2]

### A.    J.C.M.'s Background and Experience at Cleveland Metropolitan School District

J.C.M. is a seventeen-year-old[3] child who has been diagnosed with multiple disabilities. (Doc. No. 1, Compl. ¶ 3); (Doc. No. 8, Ans. ¶ 3.)[4]  J.C.M. is currently enrolled as a student in the Cleveland Municipal School District and resides in Cuyahoga County with his mother, M.F.  (Doc. No. 1, Compl. ¶¶ 2, 4, 26); (Doc. No. 8, Ans. ¶¶ 2, 4, 26.)  An Individualized Education Program ("IEP") team classified J.C.M. as a student with disability under the category of Multiple Disabilities. (Doc. No. 1, Compl. ¶ 27); (Doc. No. 8, Ans. ¶ 27.)  On February 6, 2017, M.F. completed the Behavior Assessment System for Children, Second Edition (BASC-II) – Parent Rating Scale for children ages 6-11.  (Doc. No. 1, Compl. ¶ 31); (Doc. No. 8, Ans. ¶ 31.)

---

[1] This Opinion does not set forth an exhaustive summary of all of M.F.'s allegations regarding J.C.M.'s disability and educational experience at CMSD, but instead sets forth a general overview as necessary for resolution of the current Motions.

[2] While CMSD is named as a defendant in the initial Complaint filed by M.F., it is also a Third-Party Plaintiff in the subsequent Third-Party Complaint filed against Cuddy.  In setting forth the factual background relevant to Cuddy's Motion to Strike/Dismiss CMSD's Third-Party Complaint for purposes of this Opinion, the Court accepts CMSD's factual allegations as true and construes its Third-Party Complaint in the light most favorable to it as the non-moving party.  *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

[3] M.F.'s Complaint was filed on December 1, 2023, and alleges that J.C.M. is seventeen years old.  (Doc. No. 1 at ¶ 25.) While it has been over ten months since the filing, the Court will presume that J.C.M. is seventeen for purposes of this Opinion.

[4] CMSD filed its initial Answer and Third-Party Complaint on February 29, 2024.  (Doc. No. 5.)  For purposes of this Opinion, the Court relies on the Amended Answer and Third-Party Complaint filed on April 29, 2024.  (Doc. No. 8.)

Two Evaluation Team Reports ("ETRs"), dated March 1, 2017 ("2017 ETR") and February 26, 2020 ("2020 ETR"), were created in connection with J.C.M.  (Doc. No. 1, Compl. ¶ 28); (Doc. No. 8, Ans. ¶ 28.)  At the time of his 2017 assessment, J.C.M. was able to crawl (reciprocally) on the floor or walk on his knees for a few steps as a means of mobility.  (Doc. No. 1, Compl. ¶ 33); (Doc. No. 8, Ans. ¶ 33.)  J.C.M.'s academic skills could not be assessed in the 2017 ETR due to his verbal, motoric, and sensory impairments.  (Doc. No. 1, Compl. ¶ 37); (Doc. No. 8, Ans. ¶ 37.)  Numerous parties contributed to the 2017 ETR including a speech and language pathologist, physical therapist, and occupational therapist, each of whom provided various conclusions and recommendations.  (Doc. No. 1, Compl. ¶¶ 32–35); (Doc. No. 8, Ans. ¶¶ 32–35.)  On March 19, 2019, an annual review meeting was held to develop J.C.M.'s IEP.  (Doc. No. 1, Compl. ¶ 38); (Doc. No. 8, Ans. ¶ 38.)

J.C.M. was later assessed by the school psychologist using various assessment scales.  (Doc. No. 1, Compl. ¶ 53); (Doc. No. 8, Ans. ¶ 53.)  Per the 2020 ETR, J.C.M.'s development age across adaptive domains ranged between 2 to 11 months.  (Doc. No. 1, Compl. ¶ 54); (Doc. No. 8, Ans. ¶ 54.)  The school psychologist observed that J.C.M. needed to continue developing adaptive behavior skills to increase independence in his settings.  (Doc. No. 1, Compl. ¶ 54); (Doc. No. 8, Ans. ¶ 54.)  On February 10, 2020, J.C.M. was evaluated again by various individuals including a speech and language pathologist and intervention specialist.  (Doc. No. 1, Compl. ¶¶ 55–60); (Doc. No. 8, Ans. ¶¶ 55–60.)  The 2020 ETR stated that the need for a full-time nurse may be revisited when choosing J.C.M.'s high school, and that J.C.M. continued to display profound deficits in functioning and continued to demonstrate a need for intense, targeted intervention supports in a functional curriculum.  (Doc. No. 1, Compl. ¶¶ 61–62); (Doc. No. 8, Ans. ¶¶ 61–62.)

On February 26, 2020, an IEP meeting for J.C.M. took place.  (Doc. No. 1, Compl. ¶ 63); (Doc. No. 8, Ans. ¶ 63.)  Both the 2020-2021 and 2021-2022 IEP forms indicate that J.C.M. did not require specially designed physical education and that extended school year ("ESY") services were not necessary.  (Doc. No. 1, Compl. ¶¶ 66, 72); (Doc. No. 8, Ans. ¶¶ 66, 72.)

### B.    Administrative Proceedings

On February 14, 2022, M.F. filed a Demand for Due Process Hearing with CMSD.  (Doc. No. 1, Compl. ¶ 9); (Doc. No. 8, Ans. ¶ 9.)  On March 11, 2022, M.F. filed an Amended Demand for Due Process Hearing with CMSD.  (Doc. No. 1, Compl. ¶ 11); (Doc. No. 8, Ans. ¶ 11.)  On May 3, 2022, M.F. filed a second Demand for Due Process Hearing with CMSD and, two days later, filed a Motion for Consolidation of the cases which was granted by the Impartial Hearing Officer ("IHO").  (Doc. No. 1, Compl. ¶¶ 12–14); (Doc. No. 8, Ans. ¶¶ 12–14.)  Between May 11, 2022 and October 7, 2022, the IHO conducted twelve hearings during which twenty witnesses were called; and 1917 pages of transcript were recorded.  (Doc. No. 1, Compl. ¶¶ 17–18); (Doc. No. 8, Ans. ¶¶ 17–18.)

M.F.'s Demands for Due Process Hearing included various claims against CMSD.  (Doc. No. 1, Compl. ¶ 19); (Doc. No. 8, Ans. ¶ 19.)  The parties dispute the total number of claims that were asserted.  Specifically, M.F. and Cuddy assert that there were 13 denials of a Free and Appropriate Education ("FAPE") claims included in M.F.'s Amended Due Process Complaint.  (Doc. No. 11 at p. 2; Doc. No. 10 at p. 4.)  However, CMSD contends that M.F. asserted 58 claims against it.  (Doc. No. 8, Ans. ¶ 19.)  Notwithstanding the disagreement as to the exact number or characterization of the claims, the parties agree as a general matter that the claims involve M.F.'s allegations that CMSD denied J.C.M. a FAPE during the years 2019-2023 as well as her request for an order directing CMSD

to take certain remedial actions or provide other services or necessary relief. (Doc. No. 1, Compl. ¶¶ 19, 85; Doc. No. 8, Ans. ¶ 19; Doc. No. 10 at pp. 3–5.)

On March 3, 2023, the IHO issued a 342-page decision. (Doc. No. 1, Compl. ¶ 20); (Doc. No. 8, Ans. ¶ 20.) M.F. and CMSD agree that at a minimum, the IHO ruled in favor of M.F. on five of the claims brought. (Doc. No. 1, Compl. ¶ 21); (Doc. No. 8, Ans. ¶ 21.)

On March 20, 2023, M.F., through her counsel, filed a Notice of Appeal with the Ohio Department of Education Office for Exceptional Children. (Doc. No. 1, Compl. ¶ 23); (Doc. No. 8, Ans. ¶ 23.) On September 21, 2023, the State Level Review Officer ("SLRO") issued a decision affirming the IHO's decision in its entirety. (Doc. No. 1, Compl. ¶ 24); (Doc. No. 8, Ans. ¶ 24.)

### C.    Proceedings in this Court

On December 1, 2023, M.F. in her own capacity and on behalf of J.C.M., a minor, filed a Complaint against CMSD in this Court seeking judicial review of the administrative decisions. (Doc. No. 1. Compl.) In the Complaint, M.F. sets forth various claims under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1415 *et. seq.* and its implementing state and federal regulations. (*Id.* at ¶ 1.) M.F. alleges that J.C.M. was denied a FAPE for the 2019-2023 school years. (*Id.* at p. 20.) M.F. further alleges that the IHO and SLRO erred in failing to order CMSD to conduct comprehensive evaluations of J.C.M. and provide J.C.M. with 1:1 paraprofessional service and sufficient compensatory education and seeks Orders from this Court granting such relief moving forward. (*Id.*) Finally, M.F. seeks costs, expenses, and attorneys' fees for the administrative proceedings and the present action as the alleged prevailing party. (*Id.* at ¶¶ 95–99; *Id.* at p. 21.)

5

On April 29, 2024, CMSD filed an Amended Answer ("Answer") and Amended Third-Party Complaint ("Third-Party Complaint") against Third-Party Defendants Cuddy and Green.  (Doc. No. 8.)  In its Third-Party Complaint, CMSD alleges that it was the prevailing party in the administrative proceedings, contrary to M.F.'s assertions, because the IHO denied the majority of M.F.'s 58 claims.  (*Id.* at Third-Party Compl. ¶¶ 6–28.)  CMSD also alleges that Cuddy and Green, acting as M.F.'s attorneys, knowingly filed claims that were frivolous, unreasonable, and without foundation.  (*Id.* at Third-Party Compl. ¶ 29.)  CMSD alleges that Cuddy and Green knowingly continued to pursue litigation for the purpose of needlessly increasing litigation costs by rejecting proposed joint exhibits, requesting interpreters despite M.F. being fluent in English, keeping M.F. in the dark regarding litigation developments, and failing to provide M.F. with CMSD's Offer of Settlement[5] which included multiple changes to J.C.M.'s then-current IEP as well as $20,000 in attorneys' fees.  (*Id.* at Third-Party Compl. ¶¶ 30–92.)  CMSD seeks an order affirming the IHO and SLRO's decisions and identifying CMSD as the prevailing party.  (*Id.* at Third-Party Compl. p. 29.)  CMSD also asks this Court to find that Cuddy and Green litigated frivolously, unreasonably, in bad faith, and needlessly increased litigation costs, and to issue an order awarding CMSD reasonable attorneys' fees as the prevailing party under § 1415(i)(3)(B)(i)(II)–(III) of the IDEA.  (*Id.*)

On June 28, 2024, M.F. filed her Motion to Strike Portions of Defendant's Answer.  (Doc. No. 11.)  That same day, Cuddy filed its Motion to Strike/Dismiss CMSD's Third-Party Complaint.  (Doc. No. 10.)  On July 12, 2024, CMSD filed its Brief in Opposition to M.F.'s Motion.  (Doc. No.

---

[5] CMSD attaches the Offer of Settlement as Exhibit 1 to its Answer/Third-Party Complaint.  (Doc. No. 8-1.)

16.)  On July 29, 2024, CMSD filed its Brief in Opposition to Cuddy's Motion.  (Doc. No. 19.)  On August 12, 2024, Cuddy filed its Reply Brief to CMSD's Opposition.  (Doc. No. 20.)

On September 17, 2024, Green filed her Motion to Join Cuddy Law Firm's Motion to Strike/Dismiss Third-Party Complaint.  (Doc. No. 21.)  On September 20, 2024, CMSD filed a Brief in Opposition to Green's Motion.  (Doc. No. 22.)  On September 26, 2024, Green filed her Reply Brief to CMSD's Opposition.  (Doc. No. 23.)

### III.    Statutory Framework

"The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482, offers state governments federal funding to help educate children with disabilities."  *Gibson v. Forest Hills Local School Dist. Bd. of Educ*., 655 Fed. Appx. 423, 426 (6th Cir. 2016) (citing 20 U.S.C § 1411(a)(1)).  In exchange for those funds, participating states must adopt policies and procedures that implement the Act's promise of making a FAPE available to every eligible child.  *See* 20 U.S.C. § 1412(a)(1)(A).  Ohio has opted to receive IDEA funds.  *See Gibson*, 655 Fed. Appx. at 426 (citing *Bd. of Educ. of Austintown Local Sch. Dist. v. Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities*, 613 N.E.2d 167, 172 (Ohio 1993)).

"The lynchpin of the IDEA is a document known as the 'individualized educational program' ('IEP')."  *Gibson*, 655 Fed. Appx. at 426 (citing *Honig v. Doe*, 484 U.S. 305, 311–12 (1988)).  Each academic year, an "IEP Team" comprised of an eligible child's parents, his teachers, a representative of the local educational agency, and, whenever appropriate, the child himself, meets to discuss the child's progress and educational goals. 20 U.S.C. § 1414(c)(1), (d)(1)(A)–(B), (d)(4)(A); Ohio Admin. Code § 3301–51–07(I)(1), (J)(2)(a).  The product of these meetings is the IEP, a document that evaluates the child's academic achievement and functional performance, as well as his short-term

and long-term goals. 20 U.S.C. § 1414(d)(1)(A)(i)(I)–(II), (d)(3)(B); Ohio Admin. Code § 3301–51–07(E)(1)(b)–(c). The IEP also specifies the services that the school will provide to help the child to accomplish his goals and sets forth the criteria that the IEP Team will use to evaluate the child's progress over the course of the coming year. 20 U.S.C. § 1414(d)(1)(A)(i)(III)–(IV); Ohio Admin. Code § 3301–51-07(E)(1)(d)–(e).

When parents feel that a school district has failed to comply with its obligations under the IDEA, they may file an action in federal court. 20 U.S.C. § 1415(i)(2)(A)–(B); Ohio Admin. Code § 3301–51–05(K)(16)(a)–(b). However, "because federal courts are 'generalists with no expertise in the educational needs' of students who have disabilities, the IDEA requires participating states to provide an impartial 'due process hearing' to any parent who believes her child has not received a FAPE and makes the exhaustion of that remedy a prerequisite for review in federal court." *Gibson*, 755 Fed. Appx. at 427. *See also Burilovich v. Bd. of Educ. of Lincoln Consol. Schools,* 208 F.3d 560, 566 (6th Cir. 2000).

Ohio has created a two-stage procedure for resolving IDEA disputes. If an aggrieved party files a due process demand or complaint, the Ohio Department of Education appoints an "impartial hearing officer" ("IHO"), a neutral arbiter with both legal training and familiarity with the IDEA and attendant state and federal regulations, to adjudicate the dispute. *See Gibson*, 755 Fed. Appx. at 427; Ohio Admin. Code § 3301–51–05(K)(10)(c)(i). After receiving evidence and compiling a record, the IHO renders a decision as to whether the school district has denied the pupil a FAPE. Ohio Admin. Code § 3301–51–05(K)(10)–(13). Any party who is dissatisfied with the IHO's decision may file an appeal with the Ohio Department of Education, which then appoints another neutral arbiter called a "state level review officer" ("SLRO") to review the record and issue an independent decision on the

merits. Ohio Admin. Code § 3301–51–05(K)(13)(b).  A party may then challenge the SLRO's decision in federal district court.  Ohio Admin. Code § 3301–51–05(K)(16)(a)–(b).

In any action or proceeding under the IDEA to challenge the FAPE as described above, the court may, in its discretion, award reasonable attorneys' fees as part of the costs to:

(1) The prevailing party who is the parent of a child with a disability;
(2) To a prevailing party who is the Ohio department of education or an educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or
(3) To a prevailing Ohio department of education or school district against the attorney of a parent, or against the parent, if the parent's request for a due process hearing or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

Ohio Admin. Code § 3301–51–05(K)(17)(a) (mirroring 20 U.S.C. § 1415(i)(3)(B)(i)).  Notably, if the prevailing party is an Ohio department of education or school district and the parent's request for a due process hearing or subsequent cause of action was presented for an improper purpose, the prevailing education department or school district may elect to seek fees from *either* the parent *or* the parent's attorney.  *See* Ohio Admin. Code § 3301–51–05(K)(17)(a)(iii) (mirroring 20 U.S.C. § 1415(i)(3)(B)(i)(III)).

## IV.    Analysis

### A.    Parent's Motion to Strike Portions of Defendant CMSD's Answer

In her Motion to Strike made under or pursuant to Fed. R. Civ. P. 12(f), M.F. asks this Court to strike the following paragraphs of CMSD's Answer: (1) paragraphs 19 and 21, as impertinent; and (2) paragraph 100, as privileged and protected under Fed. R. Evid. 408. (Doc. No. 11.)  The Court addresses each of these arguments separately, below.

#### 1.    Paragraphs 19 and 21 Regarding M.F.'s Claims Before the IHO

9

First, M.F. asks this Court to strike paragraphs 19 and 21 of CMSD's Answer as impertinent, arguing that these paragraphs incorrectly allege that M.F. asserted 58 claims in the due process hearing, when in-fact, her Amended Due Process Claim dated March 11, 2022, asserts only 13 claims. (Doc. No. 11 at pp. 2–3.)  M.F. asserts that even the IHO's decision, which also mischaracterized descriptions of M.F.'s claims, still recognized that there were 13 "broad claims" which were comprised of "specific claims."  (*Id*. at p. 2.)  M.F. emphasizes that § 1415(B)(7)(a)(iii) of the IDEA requires a "description of the nature of the problem of the child related to such proposed initiation or change, *including facts relating to such problem*."  (*Id*. at pp. 2–3.)  Thus, according to M.F., the numerous "specific claims" described by the IHO and CMSD are not independent claims, but rather supporting facts relating to the 13 "broad claims."  (*Id*.)  Second, M.F. asserts that paragraph 21 of CMSD's Answer erroneously alleges that the "IHO did not find that [M.F.] was the prevailing party in his decision" because it is *this* Court, not the IHO, who makes the prevailing party determination. (*Id*. at pp. 3–4.)

In response, CMSD asserts that the IHO specifically identified 57 numbered claims[6] in his decision.  (Doc. No. 16 at p. 3.)  CMSD also asserts that M.F. has failed to meet the standard for striking under Rule 12(f) because she has not shown that CMSD's allegations are impertinent.  (*Id*. at pp. 2–4.)  Specifically, CMSD explains that impertinent allegations include "statements that are not necessary to the issues presented," and argues that M.F. has made no attempt to show that paragraphs 19 and 21 have "no possible relation to the controversy."  (*Id*. at p. 4.)  CMSD argues that

---

[6] CMSD's Brief in Opposition differs from its Amended Answer and Third-Party Complaint in this regard, as its Amended Answer asserts that the IHO identified 58 claims, rather than 57.  *Compare* Doc. No. 8, Ans. ¶ 19 ("M.F., through her counsel, asserted a total of 58 Claims against the district.") *with* Doc. No. 16 at p. 3 ("Notwithstanding the reality that the IHO specifically identified 57 numbered claims in his decision…").

paragraphs 19 and 21 are necessary because they directly address the prevailing party issue for purposes of resolving M.F.'s claim for attorney fees.  (*Id.*)  CMSD points out that M.F. makes no attempt to demonstrate how she is being prejudiced, and accordingly requests that M.F.'s Motion to Strike be denied.  (*Id.*)

On its own or upon a motion, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "An immaterial matter is that which has 'no bearing on the subject matter of the litigation,'" while "[i]mpertinent allegations include statements that are not necessary to the issues presented."  *McKinney v. Bayer Corp.*, 2010 WL 2756915, at *1 (N.D. Ohio July 12, 2010) (quoting *Johnson v. Cty. of Macomb*, 2008 WL 2064968, at *1 (E.D. Mich. May 13, 2008)).  A scandalous matter "refers to 'any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.'"  *Id.* (quoting *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003)).

"A court has broad discretion in determining whether to grant a motion to strike."  *Id.* at *2.  However, "motions to strike are disfavored and granted only where the allegations are clearly immaterial to the controversy or would prejudice the movant."  *Kuhlman v. City of Cleveland*, 2023 WL 2652171, at *2 (N.D. Ohio Mar. 23, 2023) (quoting *Frisby v. Keith D. Weiner & Assocs. Co., LPA*, 669 F. Supp. 2d 863, 865 (N.D. Ohio 2009)).  Indeed, the Sixth Circuit has previously indicated that "the action of striking a pleading should be sparingly used by the court," "resorted to only when required for the purposes of justice," and "only when the pleading to be stricken has no possible relation to the controversy."  *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).  However, "motions to strike 'serve a useful purpose by eliminating insufficient

11

defenses and saving the time and expense which would otherwise be spent in litigation issues which would not affect the outcome of the case.'" *Lindenbaum v. Energy Services Providers, Inc.*, 2021 WL 3036505, at *2 (N.D. Ohio July 19, 2021) (quoting *United States v. Pretty Prod., Inc.*, 780 F. Supp. 1488, 1498 (S.D. Ohio 1991)).

The Court declines to strike paragraphs 19 and 21 from CMSD's Answer.  First, the allegations contained in paragraphs 19 and 21 are not impertinent.  M.F.'s claims presented to the IHO, and their subsequent resolution, are directly related to the relief sought in M.F.'s Complaint— including M.F.'s claim for attorneys' fees and costs which rest on a prevailing party determination. Indeed, M.F. has not argued otherwise.  Instead, M.F. asserts that CMSD has mischaracterized the underlying claims.  While M.F. may disagree with CMSD's characterization of the underlying administrative proceedings, such characterization does not rise to the level of a "redundant, immaterial, impertinent, or scandalous matter" to warrant striking under Rule 12(f).  Rather, factual disputes over the characterization of the administrative record are better addressed at a later stage of the proceedings.

As for the statement in paragraph 21 that "IHO Alexander did not issue a ruling in favor of M.F., identifying her as a prevailing party," M.F. fails to explain how the statement "has no possible relation to the controversy" or why the "purposes of justice" require striking it.  *Lindenbaum*, 2021 WL 3036505, at *2 (quoting *Brown & Williamson Tobacco Corp.*, 201 F.2d at 822)).  Nonetheless, as explained further below, the Court finds the issues of a prevailing party determination to be premature.  Accordingly, the Court finds that M.F. has not met the standard for striking paragraphs 19 and 21 under Rule 12(f).

### 2.    Paragraph 100 Regarding CMSD's Offer of Settlement

12

Next, M.F. asks this Court to strike paragraph 100 of CMSD's Answer (and the Offer of Settlement attached as an Exhibit to CMSD's Answer) as privileged and prejudicial under Fed. R. Evid. 408.  (Doc. No. 11 at pp. 4–5.)  M.F. argues that Rule 408 does not allow settlement negotiations into evidence and that such discussions are privileged.  (*Id*.)  In support of this argument, M.F. cites Sixth Circuit precedent highlighting the importance of secrecy during settlement negotiations as a matter of public policy.  (*Id*.)  M.F. asserts that CMSD has not provided the basis for attempting to introduce the Offer of Settlement and contends that CMSD "seems to be doing so only to show what [it] had offered at the time against the relief awarded by the IHO" in violation of Rule 408.  (*Id*.)

In response, CMSD argues that Rule 408 does not prohibit the admission of the Offer of Settlement.  (Doc. No. 16 at pp. 4–5.)  CMSD cites to § 1415(i)(3)(D)(i)(III) of the IDEA to show that the statute itself requires comparing the final relief obtained by parents against settlement offers received to determine which was more favorable.  (*Id*.)  Thus, CMSD argues that the Offer of Settlement must be admitted because the Court must "have before it a record sufficient to determine whether the statutory provisions concerning settlement discussions apply."  (*Id*.)

Although Rule 408 is a rule of evidence, courts have granted motions to strike when the factual allegations in pleadings would be inadmissible under the rule.  *Shepard and Associates, Inc. v. Lokring Technology, LLC*, 2021 WL 2075499, at *2 (N.D. Ohio May 24, 2021); *see also Jones v. Metro. Life Ins. Co.*, 2010 WL 4055928, at *14 (N.D. Cal. Oct. 15, 2010) ("[U]nder Federal Rule of Civil Procedure 12(f), courts have granted motions to strike references to settlement negotiations even at the pleadings stage of a case, on the basis that the contents of settlement discussions would otherwise be inadmissible under Federal Rule of Evidence 408 and are therefore immaterial and potentially prejudicial."); *U.S. ex rel. Alsaker v. CentraCare Health Sys., Inc.*, 2002 WL 1285089, at

13

*2 (D. Minn. June 5, 2002) ("[C]ourts have routinely granted motions to strike allegations in pleadings that fall within the scope of Rule 408.").

In general, "Rule 408 prohibits the admission, for certain purposes, of offers to compromise along with any statement made during the course of such compromise negotiations." *Gjokaj v. United States Steel Corp.*, 700 F. App'x 494, 501 (6th Cir. 2017). Specifically, Rule 408 provides:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
>> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>>
>> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

Thus, "Rule 408 [is] inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim." Fed. R. Evid. 408 Advisory Committee's Note to 2006 Amendment. In accordance with this principle, "numerous courts have held that settlement discussions may be considered in calculating an attorneys' fee award, which is unrelated to the amount or validity of a claim."[7] *Shepard and Associates, Inc.*, 2021 WL 2075499,

---

[7] *See, e.g.*, *Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009) ("Rule 408 does not bar a court's consideration of settlement negotiations in its analysis of what constitutes a reasonable fee award in a particular case."); *Cummings Inc. v. BP Products N. Am., Inc.*, 2010 WL 796825, at *1 n.1 (M.D. Tenn. Mar. 3, 2010) ("While Rule 408 does prohibit the admission of settlement negotiation evidence 'offered to prove liability for, invalidity of, or amount of a claim that was

14

at *3; *see also Coulter v. State of Tenn.*, 805 F.2d 146, 150 (6th Cir. 1986) (admitting settlement evidence notwithstanding Rule 408 to establish the market rate for legal fees in relation to an award for attorneys' fees), *abrogated on other grounds*; *Innovative Engineering & Consulting Corp v. Hurley & Associates, Inc.*, 2006 WL 2806387, at *9 (N.D. Ohio Sept. 28, 2006) (permitting settlement evidence notwithstanding Rule 408 to show plaintiff's failure to mitigate).

Moreover, and notably, within the context of the IDEA specifically, offers of settlement are routinely considered for purposes of calculating an attorneys' fee award.[8] *See, e.g.*, *Somberg on behalf of Somberg v. Utica Community Schools*, 908 F.3d 162, 178 (6th Cir. 2018) (considering settlement offer when determining fees under the IDEA); *Woods v. Northport Public School*, 487 Fed. Appx. 968, 981 (6th Cir. 2012) (same); *G.T. by and through A.T. v. Campbell County Board of*

---

disputed as to validity or amount,' evidence of settlement negotiations is admissible for other purposes and, as Cummings points out, numerous courts have rejected the precise argument that the defendants advance here, that is, they find that a court may consider settlement discussions in calculating an attorneys' fee award."); *Smith v. Borough of Dunmore*, 2008 WL 4542246, at *12 (M.D. Pa. Oct. 9, 2008) ("[E]vidence of settlement negotiations is not barred in an application for attorney's fees. The evidence is not used to show liability or validity of a claim or amount.").

[8] *See also Hood River County School District v. Student*, 2022 WL 1153986, at *6 (D. Or. Apr. 19, 2022) ("[T]he IDEA expressly includes consideration of settlements proposals, by carving out an exception for the award of fees after a timely settlement offer to parents who decline the settlement offer and obtain a lesser award in litigation and by allowing for a reduction in fees if a parent or attorney unreasonably protracts the litigation, which may well include considering conduct during settlement."); *Hawkins v. Berkeley Unified School District*, 2008 WL 11515278, at *3 (N.D. Cal. Nov. 20, 2008) ("….Ms. Hawkins is not relying on the settlement agreement in violation of Federal Rule of Evidence 408. That is, she is not using the settlement agreement to prove the District's liability for the underlying IDEA claim. Moreover, as a practical matter, the Court must know the terms of the settlement agreement in order to determine whether, e.g., Ms. Hawkins is the prevailing party, whether the results she obtained in the civil action were more favorable than the settlement offer made by the District, and whether there should be a fee reduction based on limited success."); *Colyn F. v. Department of Educ., Hawaii*, 2012 WL 6738539, at *1 n.1 (D. Haw. Dec. 31, 2012) ("In moving for fees under the IDEA, Plaintiffs must permit the court to have before it a record sufficient to determine whether statutory provisions concerning settlement discussions apply."); *B. v. Morgan Hill Unified School District*, 2022 WL 4371003, at *15 n.10 (N.D. Cal. Sept. 21, 2022) ("For purposes of comparison, the Court refers to the District's March 12, 2021 offer."); *A.P. v. Pasadena Unified School District*, 2021 WL 5249658, at *6 (C.D. Cal. Aug. 24, 2021) (admitting evidence of settlement offer to determine attorneys' fees under the IDEA); *Wright v. Tehachapi Unified School District*, 2017 WL 3334015, at *10 (E.D. Cal. Aug. 4, 2017) (same); *I.W. by and through Karen K. v. Hardin-Jefferson Independent School District*, 2017 WL 5644386, at *7–10 (E.D. Texas Jan. 4, 2017) (same); *Gresko v. Pemberton Township Board of Education*, 2020 WL 6042317, at *7 (D. N.J. Oct. 13, 2020) (same); *LaToya A. v. San Francisco Unified School District*, 2016 WL 344558, at *5 (N.D. Cal. Jan. 28, 2016) (same).

*Education*, 2022 WL 17407965, at *2–3 (E.D. Ky. Dec. 2, 2022) (same); *B.S. v. Board of Education of Oldham County Schools*, 2015 WL 5156578, at *3 (W.D. Ky. Sept. 2, 2015) (same); *Y.B. v. Williamson County Bd. of Educ.*, 2009 WL 4061311, at *7 (M.D. Tenn. Nov. 20, 2009) (same); *Traverse Bay Area Intermediate School Dist. v. Michigan Dept. of Educ.*, 2008 WL 351651, at *2 (W.D. Mich. Feb. 6, 2008) (same); *Gross ex rel. Gross v. Perrysburg Exempted Village School Dist.*, 306 F. Supp.2d 726, 735 (N.D. Ohio 2004) (same); *Hyden By and Through Hyden v. Board of Educ. of Wilson County*, 714 F. Supp. 290, 292–93 (M.D. Tenn. 1989) (same).

In light of the above, the Court finds that neither paragraph 100 nor the Offer of Settlement are prohibited by Rule 408 and, therefore, the Court declines to strike them.[9]  First, Rule 408 expressly permits courts to admit settlement evidence for purposes other than "prov[ing] or disprov[ing] the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  *See* Fed. R. Evid. 408(b).  Further, the IDEA expressly provides for comparing an offer of settlement to the final relief obtained by parents when determining attorneys' fees.  *See* IDEA § 1415(i)(3)(D)(i)(III).  By M.F.'s own admission, CMSD has attached the Offer of Settlement for that exact purpose.  *See* Doc. No. 11 at pg. 4 ("Defendant does not provide the basis for attempting to bring in the settlement negotiations and seems to be doing so *only to show what they had offered at the time against the relief awarded by the IHO*…) (emphasis added).

---

[9] Notwithstanding its decision not to strike paragraph 100 or the Offer of Settlement, the Court has concerns regarding the manner in which the Offer of Settlement was filed on the public docket.  The Offer of Settlement contains sensitive identifying information for both M.F. and J.C.M., a minor child.  Despite knowing that J.C.M. was a minor and that pseudonyms have been used in every filing thus far, CMSD nonetheless filed the Offer of Settlement on the public docket rather than redacting it or seeking leave to file it under seal.  The Court has since remedied the error by restricting the Offer of Settlement to Court users and case participants.  The Court reminds counsel to exercise greater caution when filing sensitive information going forward.

Finally, the three cases cited by M.F. are readily distinguishable. To start, none of the three cases involved the IDEA. In *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003), the issue involved settlement discussions between two parties in a lawsuit. Later, a separate lawsuit relating to the same facts was filed by a *different* third party, and that third party sought discovery of the settlement discussions between the parties from the *other* case to support the merits of its own claims in the *new* case. The present case is clearly distinguishable. CMSD introduced the Offer of Settlement solely to compare the Offer to the final relief, not for its truthfulness. The same is true for *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548 (E.D. Cal. 1990), where the focus was on the truthfulness of statements made during settlement negotiations. As for *Wyatt v. Sec. Inn. Food & Beverage, Inc.*, 819 F.2d 69 (4th Cir. 1987), that case cuts against M.F.'s position. There, the Fourth Circuit found that while Rule 408 "generally forbids testimony regarding compromises or offers to compromise, [it] need not prevent a litigant from offering such evidence when he does not seek to show the validity or invalidity of the compromised claim." *Id.* at 71. CMSD does not seek to prove the validity of its claim using statements made during settlement discussions—it simply seeks to compare the final relief against the Offer as permitted by the IDEA.

Therefore, and for all the reasons set forth above, M.F.'s Motion to Strike Portions of CMSD's Answer (Doc. No. 11) is DENIED.

## B. Cuddy's Motion to Strike/Dismiss Third-Party Complaint

### 1. Legal Standard

As a preliminary matter, the parties dispute the basis of Cuddy's Motion to Strike/Dismiss. Initially, Cuddy erroneously identifies Fed. R. Civ. P. Rule "14(f)" as the basis for its Motion to Strike—a rule that does not exist. (Doc. No. 10 at p. 10.) As for its Motion to Dismiss, Cuddy does

not cite to any rule.  (*Id*.)  In response, CMSD contends that the Motion to Strike is brought under Rule 12(f).  (Doc. No. 19 at pp. 2–3.)  CMSD argues that Cuddy did not specify the basis for its Motion to Dismiss, but that context suggests it is brought under Fed. R. Civ. P. 12(b)(6).  (*Id*.)  Cuddy then filed a Reply Brief, in which it indicated that its Motion to Strike citing to Rule "14(f)"—an admitted clerical error—meant to specify Rule 14(a)(4) as the basis for the Motion to Strike.  (Doc. No. 20 at pp. 1–2.)  With respect to its Motion to Dismiss, Cuddy does not address, much less disagree with CMSD's assertion that such Motion was brought under Fed. R. Civ. P. 12(b)(6).  (*Id*.)

Under Fed. R. Civ. P. 14(a)(4), "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately."  *A.W. v. Best Western International, Inc.*, 2024 WL 1340264, at *1 (S.D. Ohio Mar. 29, 2024).  While "Rule 14(a) has never expressly provided for a motion to dismiss third-party claims, the federal courts have entertained both motions to dismiss and to strike and have not drawn distinctions between them."  *Id*.; *see also* 6 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1460 (3d ed. 2024).

Here, Cuddy insists that its Motion to Strike is brought under Rule 14(a)(4) rather than Rule 12(f).  As explained above, federal courts do not distinguish between motions to strike under Rule 14(a) and motions to dismiss under Rule 12(b)(6).  As CMSD correctly notes (and Cuddy does not dispute), Cuddy is already bringing a Motion to Dismiss under Rule 12(b)(6).  Thus, Cuddy's argument that its Motion to Strike is brought under Rule 14(a)(4) raises a moot point because the same standard that applies to its Motion to Dismiss (i.e., the Rule 12(b)(6) standard) would apply regardless.  Accordingly, this Court applies the standard for motions to dismiss under Rule 12(b)(6) to Cuddy's Motion to Strike under Rule 14(a)(4).  *A.W.*, 2024 WL 1340264, at *1; *Starnes Family Office, LLC v. McCullar*, 765 F. Supp. 2d 1036, 1056 n.3 (W.D. Tenn. 2011).

18

Under Rule 12(b)(6), the Court accepts Third-Party Plaintiff CMSD's factual allegations as true and construes the Third-Party Complaint in the light most favorable to CMSD.  *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Third-Party Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. Nat. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'"  *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  Nonetheless, while "Rule 8 marks a notable and generous departure from

19

the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### 2. Construing CMSD's Third-Party Complaint as a Counterclaim

At the outset, the parties dispute the characterization of CMSD's Third-Party Complaint. In its Motion to Strike/Dismiss, Cuddy asserts that CMSD's Third-Party Complaint should be stricken because it is not dependent on the outcome of M.F.'s main claim, but instead merely relies on the same set of facts. (Doc. No. 10 at p. 2.) Cuddy contends that Rule 14(a) does not allow third-party complaints to be founded on independent causes of action, even if they arise out of the same occurrence underlying M.F.'s claim. (*Id.* at pp. 2–3.) Because CMSD's claims rely on the alleged conduct of Cuddy during the litigation rather than the allegations contained in M.F.'s Complaint, Cuddy asserts that it has been improperly impleaded under Rule 14(a). (*Id.*)

In response, CMSD asserts that Rule 14 is not the only mechanism for third-party practice, and that CMSD does not intend to invoke Rule 14—instead, CMSD submits that its "Third-Party Complaint" is meant to be or should be construed as a counterclaim grounded in Fed. R. Civ. P. 13(h) and 19(a).[10] (Doc. No. 19 at p. 5–6.) Specifically, CMSD cites Rule 13(h) for the proposition that parties may be joined for counterclaims and crossclaims and asserts that Rule 19(a) requires joinder

---

[10] Rule 14 allows a third-party complaint to be served upon "a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." *American Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). Third-party pleading under Rule 14 is "appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim." *Id.* A claim that "merely arises out of the same set of facts does not allow a third-party defendant to be impleaded" under Rule 14 because the "third-party complaint is in the nature of an indemnity or contribution claim." *Id.* Conversely, Rule 13 permits the filing of a counterclaim or crossclaim against an opposing party or co-party containing any claim that arises out of the transaction or occurrence that is the subject matter of the original action or opposing party's claim. *See* Rule 13(a)(1)(A), (g). Rule 13(h) further permits additional parties to be joined to a counterclaim or crossclaim as governed by Rules 19 and 20. *See* Rule 13(h).

of a party where the court cannot accord complete relief among existing parties in that person's absence.  (*Id.*)  CMSD asserts that the IDEA permits a prevailing educational agency to recover fees from the parent *or* the attorney of a parent.  (*Id.* at p. 6.)  Because CMSD believes it is the prevailing party and has elected to seek fees against M.F.'s attorneys rather than M.F., CMSD contends that complete relief cannot be awarded among the existing parties without joining Cuddy and Green.  (*Id.*)  Finally, CMSD highlights the common factual and legal questions between the claims and the risk of inconsistent rulings if the actions were to proceed separately.  (*Id.* at p. 6–7.)

In its Reply, Cuddy asserts that CMSD's framing of its Third-Party Complaint as a counterclaim under Rules 13(h) and 19 is merely a "last ditch effort" to avoid Cuddy's Motion to Strike.  (Doc. No. 20 at p. 2.)  Cuddy notes that CMSD delineated its filing as a "Third-Party Complaint" and did not cite to Rules 13(h) or 19 anywhere in the filing.[11]  (*Id.*)  Cuddy contends that different laws and arguments would have been required for it to properly address a counterclaim, and thus, CMSD's pleading should be treated as a third-party complaint under Rule 14.  (*Id.*)  Finally, Cuddy briefly notes that if CMSD was filing a counterclaim under Rules 13(h) and 19, such a counterclaim would be time-barred.[12]  (*Id.*)

---

[11] While CMSD did not cite to Rules 13(h) or 19 in its Third-Party Complaint, it also did not cite to Rule 14.  Rather, CMSD did not specify the rule under which its pleading was brought.  *See* Doc. No. 8, Third-Party Compl.

[12] In one sentence and a footnote in its Reply Brief, Cuddy briefly asserts that CMSD's purported "counterclaim" under Rules 13 and 19 would be time-barred.  First, this argument is being raised for the first time in Cuddy's Reply Brief and was not addressed in Cuddy's initial Motion or in CMSD's Opposition.  Nonetheless, Cuddy is mistaken because the "time limit for a party that prevails at an administrative IDEA hearing to seek attorneys' fees does not begin to run until the aggrieved party's time for challenging the hearing officer's decision expires … Upon expiration of this period, an administrative decision becomes final, and the parties know who is the prevailing party."  *Akron Board of Education v. Wallace*, 2017 WL 5654767, at *4 (N.D. Ohio Nov. 22, 2017) (citing cases).  An IDEA action is "final only upon the latter of the expiration of the appeal period *or the entry of judgment with respect to any appeal filed in federal district court.*"  *Troy Public Schools v. Wine*, 2022 WL 135911, at *3 (E.D. Mich. Jan. 14, 2022) (emphasis added).  Here, M.F. has appealed the relief awarded in the administrative proceedings in this Court.  Thus, the time limit for seeking fees does not begin to run until this Court has entered final judgment with respect to the relief sought by M.F.

"Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e); *see also Carter v. Ford Motor Co.*, 561 F.3d 562, 566 (6th Cir. 2009); *Collar Jobs, LLC v. Stocum*, 2023 WL 8717465, at *18 (N.D. Ohio Dec. 18, 2023). A court must construe pleadings "liberally in order to prevent errors in draftsmanship from barring justice to litigants." *Carter*, 561 F.3d at 566; *Livneh v. Village of Oak Harbor*, 2017 WL 3575852, at *2 n.3 (N.D. Ohio Aug. 17, 2017). Rule 8(e) requires courts to "not rely solely on labels in a complaint," but instead to "probe deeper and examine the substance of the complaint." *Stoudemire v. Michigan Dept. of Corrections*, 705 F.3d 560, 570 (6th Cir. 2013); *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 795 (6th Cir. 2003).

In light of Rule 8(e), courts have construed claims erroneously brought as "third-party claims" under Rule 14 as counterclaims under Rule 13. *See, e.g.*, *Collar Jobs,* 2023 WL 8717465, at *18; *Baker v. Pierce*, 1987 WL 36585, at *2 n.2 (6th Cir. Jan. 27, 1987); *DNA Health, LLC (NJ) v. Liv Health LLC*, 2023 WL 2110882, at *2 n.1 (E.D. Ky. Feb. 17, 2023). In *Collar Jobs*, for example, certain parties filed a "third-party complaint" citing Rule 14, even though their claims did not seek to transfer liability for the plaintiff's claim. 2023 WL 8717465, at *17. Those parties later asserted that their claims were meant to be brought under Rule 13, rather than Rule 14. *Id.* at *18. Despite the parties erroneously citing to Rule 14, the court construed the "third-party claim" as a counterclaim under Rule 13, with the third-party defendant being constructively joined as a counterclaim defendant under Rule 19. *Id.*; *see also Baker*, 1987 WL 36585, at *5 n. 2 (same). In "construing the pleadings to do justice" under Rule 8(e), the court explained that it was appropriate to address the claims as they had "*actually been litigated*." *Collar Jobs*, 2023 WL8717465, at *18.

Although the allegations and claims against Cuddy and Green are set forth or included in what CMSD has captioned or delineated a Third-Party Complaint, CMSD is now asking this Court to

construe them as a counterclaim under Rules 19 and 13(h) rather than a third-party complaint under Rule 14.  As discussed in *Collar Jobs*, Rule 8(e) instructs courts not to rely solely on the labeling of pleadings but instead to probe deeper and examine their substance.  *Collar Jobs*, 2023 WL8717465, at *18.  When probing deeper to "examine the substance of the complaint," it is immediately apparent that CMSD is not seeking to rely on Rule 14.  *Stoudemire*, 705 F.3d at 570.  CMSD's "Third-Party Complaint" never cites to Rule 14 as did the parties in *Collar Jobs*, who even then still had their pleading construed liberally as a counterclaim.  *Collar Jobs*, 2023 WL8717465, at *18.  Nor does CMSD's "Third-Party Complaint" seek to hold Cuddy and Green "liable to it for all or part of the claim" brought by M.F. against CMSD as required under Rule 14.  Indeed, Cuddy acknowledges this in its Motion, noting that CMSD is "not seeking a finding that [Cuddy] is liable to the student for denials of his [FAPE]."[13]  (Doc. No. 10 at p. 3.)  Accordingly, the Court will evaluate CMSD's argument that its "Third-Party Complaint" should be construed as a counterclaim[14] under Rules 19 and 13(h).[15]

### 3.     Attempted Joinder of Cuddy as a Party Under Rules 19 and 13(h)

---

[13] The two cases relied upon by Cuddy are distinguishable as they only address impleading under Rule 14.  (Doc. No. 10 at pp. 2–3.)  Neither case addresses the issue of whether a third-party may be required to be joined under Rule 19—in which case a "court *must* order that the person be made a party."  *See* Rule 19(a)(2) (emphasis added).

[14] To avoid confusion, the Court will continue to refer to CMSD's pleading by its originally stated caption "Third-Party Complaint."

[15] Cuddy makes one final argument in the last sentence of its footnote, in which it asserts that CMSD's Opposition Brief was untimely because it was due within 30 days but was filed on day 31.  (Doc. No. 20 at p. 3.)  Notwithstanding that the Court has excused Cuddy for filing (on behalf of M.F.) its own Motion to Strike Portions of CMSD's Answer 39 days late—as it was due within 21 days of CMSD's Answer being filed—CMSD's 30-day deadline fell on a Sunday and courts regularly permit parties to file the next business day when deadlines fall on weekends or holidays.

23

The Court first addresses whether Cuddy is "necessary to the action and should be joined if possible" under Rule 19(a). *Keweenaw Bay Indian Cmty. v. State*, 11 F.3d 1341, 1345 (6th Cir. 1993). Rule 19(a) provides as follows:

> **(a) Persons Required to Be Joined if Feasible**.
>
> **(1) Required Party**. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). The burden is on the moving party to establish that a party is necessary for purposes of Rule 19(a). *See Eagle Realty Invs., Inc. v. Dumon*, 2019 WL 608830 at *2 (S.D. Ohio Feb. 13, 2019).

"There is no precise formula for determining whether a party should be joined under Rule 19(a)." *Laukus v. Rio Brands, Inc.*, 2011 WL 4737579, at *2 (N.D. Ohio Oct. 6, 2011); *see also Babcock v. Maple Leaf, Inc.*, 424 F.Supp. 428, 431 (E.D. Tenn. 1976); 7 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1604 (3d ed. 2024). Rather, the decision should generally be made in consideration of "(1) avoiding multiple litigation, (2) providing the parties with complete and effective relief in a single action, and (3) protecting the absent persons from the possible prejudicial effect of deciding the case without them." *Laukus*, 2011 WL 4737579, at *2; *Babcock*, 424 F.Supp. at 431. Rule 19(a) deals with the possibility of complete relief among existing parties.

24

*Laukus*, 2011 WL 4737579, at \*2.  The application of Rule 19(a) should not be rigid but "should instead be governed by the practicalities of the individual case." *Keweenaw Bay Indian Cmty*, 11 F.3d at 1346.

The Court finds that Cuddy is a required party under Rule 19(a).  First, including Cuddy in the present case would avoid multiple and redundant litigation.  M.F. seeks attorneys' fees based on the theory that she is the prevailing party, and CMSD seeks the same.  Thus, the central issue of determining prevailing party status is raised in both M.F.'s Complaint and CMSD's Third-Party Complaint.  Allowing the two actions to proceed separately creates a risk of inconsistent rulings as to who the prevailing party is.  Second, joining Cuddy is necessary to provide the parties with "complete and effective relief." *Laukus*, 2011 WL 4737579, at \*2; *Babcock*, 424 F.Supp. at 431. The IDEA authorizes a prevailing education agency to recover fees against *either* the parent *or* the attorney of the parent under § 1415(i)(3)(B)(i)(III).  CMSD seeks attorneys' fees as the prevailing party under that provision. *See* Doc No. 8. at Third-Party Compl. p. 29.  Because CMSD has elected to make its fee recovery claim against M.F.'s attorneys rather than M.F., complete relief cannot be afforded without joining Cuddy.  Finally, in similar fashion, joining Cuddy is necessary to protect its interests from the "possible prejudicial effect of deciding the case without [it]." *Laukus*, 2011 WL 4737579, at \*2; *Babcock*, 424 F.Supp. at 431.  If CMSD ultimately proves that it is the prevailing party and that M.F.'s complaint was presented to needlessly increase litigation costs, Cuddy may be liable for attorneys' fees under § 1415(i)(3)(B)(i)(III).  It is thus imperative that Cuddy have the chance to refute CMSD's claims, rather than holding Cuddy liable without the opportunity to be heard.  Accordingly, the Court finds that Cuddy is necessary to the action.

Having found that Cuddy is a necessary party under Rule 19(a), the Court next looks to whether "joinder of that person or entity will deprive the court of subject matter jurisdiction." *Carter v. Deutsche Bank National Trust Company*, 2017 WL 4740570, at *2 (6th Cir. Aug. 30, 2017); *Laethem Equipment Co. v. Deere & Co.*, 485 Fed. Appx. 39, 43 (6th Cir. 2012). If not, "the court *must* order that the person be made a party." *See* Rule 19(a)(2) (emphasis added); *Ackerman v. OhioHealth Mansfield Hospital*, 2024 WL 3819617, at *2 (N.D. Ohio Aug. 14, 2024); *see also Local 670, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL–CIO v. Int'l Union, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL–CIO*, 822 F.2d 613, 618 (6th Cir. 1987).

In this instance, joining Cuddy would not deprive the Court of subject matter jurisdiction. Subject matter jurisdiction in the present action is based upon the IDEA—a federal statute. *See* 28 U.S.C. § 1331; 20 U.S.C. § 1415(i)(3)(A) ("The district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy."). Cuddy's joinder thus would not impact subject matter jurisdiction.

Because the requirements for joinder under Rule 19 are met, the Court turns to whether CMSD can assert a counterclaim to join Cuddy as a party under Rule 13(h). Rule 13(h) allows additional parties to be joined to an existing counterclaim in accordance with Rules 19 and 20. *See* Rule 13(h). As a general principle, the "rights of all parties generally should be adjudicated in one action." *Lexington Streetsboro, LLC v. Geis*, 2008 WL 5723491, at *6 (N.D. Ohio Feb. 22, 2008); *Lasa Per L'Industria Del Marmo Societa Per Azioni of Laza, Italy v. Alexander*, 414 F.2d 143, 146 (6th Cir. 1969). Rule 13(h) is interpreted "liberally to promote the expeditious and economic administration of justice." *DNA Health, LLC (NJ)*, 2023 WL 2110882, at *2.

26

Nonetheless, a counterclaim "cannot be directed *only* against a person who is not already a party to the original suit." *Id.* (emphasis added); *see also Lexington Streetsboro, LLC*, 2008 WL 5723491, at *6; 6 Wright & Miller, *supra*, § 1435. Rule 13(h) only authorizes the court to join additional persons to a counterclaim that "already is before the court or one that is being asserted at the same time the addition of the non-party is sought." *Lexington Streetsboro, LLC*, 2008 WL 5723491, at *6 (citing cases); 6 Wright & Miller, *supra*, § 1435. In other words, to "join a new party under Rule 13(h), a counterclaim must involve at least *one existing party*." *DNA Health, LLC (NJ)*, 2023 WL 2110882, at *2 (emphasis added); *see also Lexington Streetsboro, LLC*, 2008 WL 5723491, at *6 (collecting cases); 6 Wright & Miller, *supra*, § 1435.

The Court finds that Rule 13(h) is not a proper mechanism to join Cuddy in the present action. In this case, CMSD has consciously elected to pursue attorneys' fees against Cuddy and Green rather than M.F. *See* Doc. No. 19 at p. 6 ("The District … has chosen to *not* pursue any claims against the Parent based on the facts of the case and has instead asserted its claims against the Third-Party Defendants."). While the IDEA permits CMSD to pursue claims against Cuddy alone rather than both Cuddy and M.F. together,[16] that approach prohibits this Court from joining Cuddy under Rule 13(h) because CMSD's claim against Cuddy does not "involve at least one existing party." *DNA Health, LLC (NJ)*, 2023 WL 2110882, at *2. Accordingly, CMSD's "Third-Party Complaint" must be viewed as setting forth an independent claim, rather than a counterclaim under Rule 13, because it is asserted only against Cuddy and not against any other existing party. *Id.*; *Lexington Streetsboro, LLC*, 2008 WL 5723491, at *6; 6 Wright & Miller, *supra*, § 1435.

---

[16] *See* § 1415(i)(3)(B)(i)(III) (authorizing recover of attorneys' fees against either a parent or the attorney of a parent).

27

Nonetheless, the Court declines to dismiss CMSD's claim because misjoinder is not a sufficient ground to dismiss an action. *See* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action."); *Roberts v. Doe*, 2017 WL 3224655, at *2 (6th Cir. 2017) ("Where parties have been misjoined, a district court may drop a party or sever a claim against a party but may not dismiss the action on that basis.") (*citing Letherer v. Alger Group, L.L.C.*, 328 F.3d 262, 267 (6th Cir. 2003), *overruled on other grounds*). Rather, the "appropriate remedy for misjoinder under the Federal Rules of Civil Procedure is severance, not dismissal." *Lovett v. Lucas*, 2009 WL 1362590, at *1 (N.D. Ohio May 13, 2009); *Arista Records, LLC v. Does 1-11*, 2008 WL 4823160, at *2 (N.D. Ohio Nov. 3, 2008). Although CMSD's "Third-Party Complaint" is an independent claim that cannot constitute or qualify as a counterclaim against Cuddy, misjoinder is not a sufficient ground to dismiss an action, and severance under Rule 21 is appropriate.

Yet, for all the reasons discussed in the previous Rule 19 analysis, the Court is still convinced that M.F.'s Complaint and CMSD's claim against Cuddy should proceed together because Cuddy is necessary to afford complete relief among existing parties. Therefore, because joining Cuddy under Rule 13(h) would be improper, the Court instead opts to cure Cuddy's misjoinder by severing CMSD's claim under Rule 21[17] and thereafter consolidating it into the present action under Fed. R.

---

[17] *See* Rule 21 ("The court may also sever any claim against a party."); *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("The manner in which a trial court handles misjoinder lies within that court's sound discretion."); *Kitchen v. Heyns*, 2016 WL 11618616, at *1 (6th Cir. Nov. 21, 2016) (same); *Parchman v. SLM Corporation*, 896 F.3d 728, 733 (6th Cir. 2018) ("The permissive language of Rule 21 permits the district court broad discretion in determining whether or not actions should be severed."); *Billingsley v. Lincoln Electric Company*, 2022 WL 4599189, at *2 (N.D. Ohio Sept. 30, 2022) ("Should a finding be made … that parties have been misjoined, Rule 21 provides … that the court may sever such parties at any time, on just terms.").

Civ. P. 42(a)(2).[18]  Such an approach will permit M.F. and CMSD's claims to be heard together as required by Rule 19 while remedying the misjoinder issues created by Rule 13(h).

To implement the severance, the Court shall direct the Clerk's Office as follows.  Upon receipt of an individual complaint filed by CMSD against Cuddy and Green and marked as related to this case—to be filed within fourteen days of this Opinion—the Clerk's Office shall: (1) waive the filing fee; and (2) mark the newly filed case as related to the original action—Case No. 1:23-cv-2308—and assign it to the undersigned District Judge.  *See Lovett*, 2009 WL 1362590, at *2 (setting forth procedure for implementing severance under Rule 21); *Arista Records, LLC*, 2008 WL 4823160, at *7 (same).  Then, once the new case containing CMSD's claims against Cuddy and Green is assigned to this Court, the Court will consolidate that action with the present case pursuant to its authority under Rule 42(a)(2).

Accordingly, the Court severs CMSD's Third-Party Complaint from the present action under Rule 21.  The Court further orders CMSD to re-file its claims against Cuddy and Green as a new and separate complaint marked as related to this case within fourteen days so that it may be consolidated with the present action.

---

[18] *See* Rule 42(a)(2) ("If actions before the court involve a common question of law or fact, the court may consolidate the actions."); *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 412 (6th Cir. 1998) ("[A] case may be consolidated 'when actions involving a common question of law or fact are pending before the court.'"); *In re Cannonsburg Environmental Associates, Ltd.*, 72 F.3d 1260, 1269 (6th Cir. 1996) (noting that Rule 42 gives courts "broad authority" to consolidate actions with common legal or factual questions to "avoid unnecessary costs or delay"); *In re Northeast Ohio Correctional Center*, 2000 WL 553917, at *1–2 (6th Cir. Apr. 28, 2000) (affirming consolidation because the district court "properly found that the actions involved common questions of law and fact"); *Molesky v. State Collection & Recovery Services, LLC*, 2013 WL 3729168, at *2 (N.D. Ohio July 12, 2013) ("A district court enjoys broad discretion to consolidate where common questions of law or facts are present.") (*citing Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993)).

As the above-described severance is merely a procedural remedy to allow the cases to be heard together and does not serve to permanently dispose of the parties' claims, the Court will continue to address the parties' remaining arguments below.

### 3.    Prevailing Party Determination and Needlessly Increased Litigation Costs

Next, the Court turns to the parties' dispute regarding the prevailing party determination and needlessly increased litigation costs.  In its Motion, Cuddy first asserts that CMSD's claim that the IHO concluded that M.F. was not the prevailing party is baseless because only this Court has jurisdiction to make that determination.  (Doc. No. 10. at pp. 3–5.)  Next, Cuddy asserts that the prevailing party determination is not based on comparing how many claims were raised against the number of claims granted.  (*Id.* at p. 3.)  Cuddy also cites to the administrative record to support its assertion that there were only 13 claims brought before the IHO, rather than 58 claims as alleged by CMSD.  (*Id.* at pp. 3–4.)  Thus, Cuddy requests that this Court strike the paragraphs of CMSD's Third-Party Complaint referencing the "58 claims" as impertinent and nonfactual.  (*Id.* at p. 4.)  As for CMSD's claims that Cuddy needlessly raised litigation costs, Cuddy asserts that these allegations are untrue and mislead the court, repeatedly citing to the underlying administrative record for factual support.  (*Id.* at pp. 5–9.)

In its Opposition Brief, CMSD responds that Cuddy did not make any arguments under Rule 12(b), nor did it meet the high bar of showing that CMSD's allegations have "no possible relation" to the case under Rule 12(f).  (Doc. No. 19 at pp. 4–5.)  CMSD asserts that Cuddy merely complains that CMSD's allegations are false, disparaging, and prejudicial without any legal support.  (*Id.* at pp. 9–10.)  CMSD contends that its allegations must be accepted as true for purposes of a Rule 12 motion, and that Cuddy is disregarding the legal standard.  (*Id.* at p. 10.)  But nonetheless, CMSD asserts that

its allegations are true regardless and cites to various parts of the administrative record to factually rebut Cuddy's arguments. (*Id.* at pp. 10–12.) Finally, CMSD contends that it never alleged that the IHO ruled that CMSD was the prevailing party—rather, CMSD is simply asking *this* Court to declare it the prevailing party based on obtaining a favorable decision from the IHO. (*Id.* at p. 8.)

In its Reply Brief, Cuddy contends that CMSD continues to mischaracterize M.F.'s initial complaint and the language from the IHO's decision. (Doc. No. 20. at p. 3.) Cuddy re-asserts the earlier argument made by M.F. in her Motion to Strike that there were only 13 "broad claims," and that all other points were simply the "facts relating to such problem" as required by § 1415(B)(7)(a)(iii) of the IDEA. (*Id.* at pp. 3–4.) Because the IHO found *some* violation of FAPE for each of the various school years and awarded relief, Cuddy maintains that M.F. is the prevailing party. (*Id.* at p. 4.)

The Court finds the issues of prevailing party determination and attorneys' fees to be premature. First, M.F. is currently appealing before this Court the relief obtained in the underlying administrative proceedings. (Doc. No. 1 at pp. 20–21.) Thus, the Court cannot determine the prevailing party or award attorneys' fees at this time because the relief is not final. *See, e.g.*, *Akron Board of Education*, 2017 WL 5654767, at *1 (declining to address attorneys' fees issue because administrative appeal was still pending). Indeed, a core issue regarding the attorneys' fees involves comparing the Offer of Settlement against the final relief—which has not yet been awarded by this Court. Moreover, a prevailing party is one who "succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Tompkins ex rel. A.T. v. Troy School Dist.*, 199 Fed. Appx. 463, 465 (6th Cir. 2006). To analyze whether any of the issues that M.F.

obtained relief on constituted "significant" issues will require a deeper examination of the underlying administrative record.  The Court declines to do so at this stage.

Similarly, the Court finds the issue of needlessly increased litigation costs to be premature. As discussed above, both Cuddy and CMSD extensively cite to the underlying administrative record for support while addressing this issue.  Judicial factfinding is improper for purposes of a Rule 12(b) motion.  Instead, as correctly noted by CMSD, a Rule 12(b) motion requires taking the factual allegations as true and construing the facts in the light most favorable to the non-moving party.  *See Gunasekera*, 551 F.3d at 466.  Cuddy has failed to demonstrate how CMSD has failed to state a claim upon which relief may be granted, taking its allegations as true.  And to the extent that Cuddy claims that its request to strike was in-fact brought under Rule 12(f), it has failed to show how CMSD's allegations have "no possible relation to the controversy."  *Brown & Williamson Tobacco Corp.*, 201 F.2d at 822.

Accordingly, the Court finds it more appropriate to address these issues at a later stage of the proceedings.

### 5.    CMSD's Offer of Settlement and Rule 408

In its Motion, Cuddy next asserts that CMSD improperly attached the Offer of Settlement to its Third-Party Complaint because the Offer is based on confidential privileged settlement negotiations.  (Doc. No. 10 at p. 9.)  Specifically, Cuddy alleges that the Offer of Settlement is a "regurgitation of what was discussed *ad nauseum* from December 2021 to March 25, 2022," including mediation discussions.  (*Id.*)  Cuddy thus requests that this Court strike the attached Offer of Settlement and paragraphs 54–89 of CMSD's Third-Party Complaint.  (*Id.* at p. 10.)  Further, Cuddy characterizes CMSD's allegations that Cuddy did not share settlement offers with M.F. as "blatantly

false" and claims that such information is protected by the attorney-client privilege. (*Id.* at pp. 10–11.) Cuddy cites to M.F.'s testimony in the administrative record for factual support that M.F. was aware of CMSD's settlement offers. (*Id.* at p. 11.)

In its Opposition Brief, CMSD responds that the Offer of Settlement is admissible under the IDEA's framework for determining attorneys' fees notwithstanding Rule 408. (Doc. No. 19 at p. 12.) Specifically, CMSD cites to § 1415(i)(3)(D)(i)(I)–(III) for the notion that parents may not recover attorneys' fees if they declined to accept a settlement offer that was more favorable than the ultimately obtained relief.[19] (*Id.*) CMSD states that evidence of settlement offers must therefore be admissible for courts to make that determination. (*Id.*) Further, CMSD points the Court to the language contained in the Offer of Settlement which expressly provides that the Offer was made pursuant to § 1415(i)(3)(D)(i)(I)–(III) and explicitly states: "Please also advise your client that in the event [the IHO] finds that the relief obtained by Parent at the Due Process Hearing is not more favorable to her than this offer, attorneys' fees and related costs shall not be awarded to her. Please be advised that the District reserves its right to use this Written Offer of Settlement to challenge any fee request arising out of or related to this dispute." (*Id.* at p. 13.) Finally, CMSD refutes Cuddy's assertion that M.F. was aware of CMSD's Offer of Settlement by citing to different parts of M.F.'s testimony from the administrative record. (*Id.* at p. 11.)

In its Reply Brief, Cuddy asserts that it is premature for CMSD to use its Offer of Settlement in the attorneys' fees analysis because the relief provided by the IHO is still on appeal. (Doc. No. 20 at p. 4.) Finally, Cuddy states that CMSD's Offer of Settlement was a "farce" and that it was "known

---

[19] § 1415(i)(3)(D)(i)(I)–(III) of the IDEA also requires that the settlement offer was made to the parent more than ten days before the proceeding begins, and that the parent did not accept the offer within ten days.

to all parties to this case" that CMSD would not realistically be able to provide the relief contained in its Offer of Settlement. (*Id.* at pp. 4–5.)

The Court finds that the Offer of Settlement is not privileged under Rule 408. The Court's reasons are adequately stated in its previous analysis addressing M.F.'s Motion to Strike Portions of CMSD's Answer, and the Court need not re-address the issue here. CMSD intends to use the Offer of Settlement for the sole purpose of comparing it against the final relief awarded to determine attorneys' fees, as permitted by the IDEA, and not for its truthfulness. Thus, Rule 408 does not bar its admission. As for the notion that CMSD's Offer of Settlement was a "farce," that is irrelevant at this stage for purposes of dismissing CMSD's Third-Party Complaint under the Rule 12(b) standard.

Finally, the Court declines to rule on the attorney-client privilege issue of whether Cuddy shared CMSD's Offer of Settlement with M.F. That inquiry requires a deeper review of the administrative record, as evidenced by both Cuddy and CMSD's repeated references thereto. Such a review is premature. Accordingly, that privilege issue is better suited to be addressed at a later stage of the proceedings.

Therefore, and for all the reasons set forth above, Cuddy's Motion to Strike/Dismiss CMSD's Third-Party Complaint (Doc. No. 10) is DENIED.

### C. Alia Green's Motion to Join Cuddy's Motion

Finally, the Court turns to Green's Motion to Join Cuddy's Motion to Strike/Dismiss CMSD's Third-Party Complaint (Doc. No. 21.) In her Motion, Green makes a one-sentence request to join Cuddy's Motion to Strike/Dismiss CMSD's Third-Party Complaint. (*Id.*) In response, CMSD filed an Opposition Brief to Green's Motion (Doc. No. 22) asserting that Green's Motion should be denied for numerous reasons including untimeliness, refusing to waive service, and failing to demonstrate

good cause or excusable neglect.  (Doc. No. 22 at pp. 1–4.)  Thereafter, Green filed a Reply Brief (Doc. No. 23) in which she describes in more detail the circumstances surrounding her initial Motion. (Doc. No. 23 at pp. 1–3.)

In light of the Court's denial of Cuddy's Motion to Strike/Dismiss, Green's Motion raises a moot point—for even if Green was permitted to join Cuddy's Motion, her Motion to Strike/Dismiss would be denied for the same reasons that Cuddy's Motion is being denied.  The Court thus finds it unnecessary to address the merits of Green's Motion to Join.  Accordingly, Green's Motion is DENIED as moot.

## VI.    Conclusion

For all the foregoing reasons, M.F.'s Motion to Strike Portions of CMSD's Answer (Doc. No. 11) is DENIED.  Cuddy's Motion to Strike/Dismiss CMSD's Third-Party Complaint (Doc. No. 10) is DENIED.   Green's Motion to Join Cuddy's Motion to Strike/Dismiss CMSD's Third-Party Complaint (Doc. No. 21) is DENIED as moot.

The Court SEVERS CMSD's Third-Party Complaint from this action and ORDERS CMSD to re-file its claims against Cuddy and Green in a new and separate complaint and delineate it as related to this case within fourteen days of this Opinion for purposes of being consolidated with the present action.  To implement the severance, the Court directs the Clerk's Office as follows.  Upon receipt of an individual complaint filed by Cleveland Metropolitan School District against Cuddy Law Firm P.L.L.C. and Alia E. Green and marked as related to this case, the Clerk's Office shall:

(1) waive the filing fee; and

(2) mark the newly filed case as related to the original action—Case No. 1:23-cv-2308—and assign it to the undersigned District Judge.

**IT IS SO ORDERED.**


                              *s/Pamela A. Barker*
                              PAMELA A. BARKER

Date:  October 24, 2024              U. S. DISTRICT JUDGE