# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**M.F., individually and on behalf of minor child, J.C.M., an individual with a disability, et al.,**

**Case No. 1:23-cv-02308-PAB**

                                           **Plaintiffs,**

**JUDGE PAMELA A. BARKER**

                         **-vs-**

**MEMORANDUM OPINION & ORDER**

**CLEVELAND METROPOLITAN SCHOOL DISTRICT, et al.,**

                                           **Defendants.**

Pending before the Court are: (1) the Motion of Plaintiff M.F., individually and on behalf of minor child J.C.M, an individual with a disability ("Plaintiff" or "M.F.") to Submit Additional Evidence to the Administrative Record ("Plaintiff's Motion to Supplement") (Doc. No. 34); and (2) the Motion of Defendant Cleveland Metropolitan School District ("Defendant" or "CMSD") to Supplement the Administrative Record ("CMSD's Motion to Supplement") (Doc. No. 35).

For the following reasons, CMSD's Motion to Supplement is **GRANTED** and Plaintiff's Motion to Supplement is **GRANTED IN PART** and **DENIED IN PART**.

## I.    Relevant Factual and Procedural Background

Plaintiff's Complaint sets forth the following allegations.[1]

---

[1] This Opinion does not set forth an exhaustive summary of all of M.F.'s allegations regarding J.C.M.'s disability and educational experience at CMSD, but instead sets forth a general overview as necessary for resolution of the current Motions.

**A.     J.C.M.'s Background and Experience at Cleveland Metropolitan School District**

J.C.M. is a seventeen-year-old[2] child who has been diagnosed with multiple disabilities.  (Doc. No. 1 at PageID #1.)  J.C.M. is currently enrolled as a student in the Cleveland Municipal School District and resides in Cuyahoga County with his mother, M.F.  (*Id.* at PageID #1, 5.)  An Individualized Education Program ("IEP") team classified J.C.M. as a student with disability under the category of Multiple Disabilities, demonstrating profound delays in cognitive, communication, social-emotional, adaptive behavior, and fine/gross motor development.  (*Id.* at PageID #5.)

On February 6, 2017, M.F. completed the Behavior Assessment System for Children, Second Edition (BASC-II) – Parent Rating Scale for children ages 6-11.  (*Id.* at PageID #6.)  According to Plaintiff, "[t]he results showed that [J.C.M.] was 'At-Risk' or 'Clinically Significant' in all areas of adaptive skills."  (*Id.*)

Two Evaluation Team Reports ("ETRs"), dated March 1, 2017 ("2017 ETR") and February 26, 2020 ("2020 ETR"), were created in connection with J.C.M.  (*Id.* at PageID #5.)  According to Plaintiff, "[b]oth ETRs indicate that J.C.M.'s level of functional independence is extremely limited for his age, and both conclude with the need for intensive services."  (*Id.*)

At the time of his 2017 assessment, J.C.M. was able to crawl (reciprocally) on the floor or walk on his knees for a few steps as a means of mobility.  (*Id.* at PageID #6.)  J.C.M.'s academic skills could not be assessed in the 2017 ETR due to his verbal, motoric, and sensory impairments.

---

[2] Plaintiff's Complaint was filed on December 1, 2023.  (Doc. No. 1.)  Therein, the Complaint alleges that J.C.M. is a seventeen-year-old child.  (*Id.* at PageID #1.)  The Court recognizes that it has since been more than one year since the filing of the Complaint, and thus, J.C.M. is no longer seventeen years old.  For purposes of consistency, however, and because the allegations are made in reference to J.C.M. as of December 1, 2023, the Court will rely on the language of the Complaint.

(*Id.* at PageID #7.)  Numerous parties contributed to the 2017 ETR including a speech and language pathologist, physical therapist, and occupational therapist, each of whom provided various conclusions and recommendations.[3]  (*Id.* at PageID #6–7.)  On March 19, 2019, an annual review meeting was held to develop J.C.M.'s IEP.[4]  (*Id.* at PageID #8.)

J.C.M. was later assessed by the school psychologist using various assessment scales.  (*Id.* at PageID #12.)  Per the 2020 ETR, J.C.M.'s development age across adaptive domains ranged between 2 to 11 months.  (*Id.*)  The school psychologist observed that J.C.M. needed to continue developing adaptive behavior skills to increase independence in his settings.  (*Id.*)  On February 10, 2020, J.C.M. was evaluated again by various individuals including a speech and language pathologist and intervention specialist.  (*Id.* at PageID #12–14.)  The 2020 ETR provided that the need for a full-time nurse may be revisited when choosing J.C.M.'s high school, and that J.C.M. continued to display profound deficits in functioning and continued to demonstrate a need for intense, targeted intervention supports in a functional curriculum.  (*Id.* at PageID #14.)

On February 26, 2020, an IEP meeting for J.C.M. took place to develop an IEP for February 2020 through February 2021 ("2020-21 IEP").  (*Id.* at PageID #14.)  As part of the 2020-21 IEP, the "IEP team provided the following specially designed services: direct instruction with an intervention specialist for 40 minutes once per week, and physical therapy services to work on gait training and other therapeutic exercises for 20 minutes per session, 6 sessions per semester."  (*Id.* at PageID #14–

---

[3] For example, Plaintiff alleges that "[t]he physical therapist concluded that J.C.M. needs a wheelchair-accessible school building, a trained adult caregiver for his wheelchair mobility and walking supervision, designed time out of his wheelchair to prevent skin breakdown and muscle contractures, as well as continued monitoring for the fit and function of his adapted equipment."  (Doc. No. 1 at PageID #6.)  Similarly, "[t]he occupational therapy assessment conducted in the 2017 ETR reported that J.C.M. is dependent on staff for all manner of self-care, and must be supervised at all times to prevent the risk of choking."  (*Id.* at PageID #7.)

[4] The complete allegations relating to this meeting can be found in the Complaint.  (*See* Doc. No. 1 at PageID #8–12.)

15.)  The IEP team also "provided 5 direct speech and language therapy sessions per semester with a pathologist, for 15 minutes per session."  (*Id.* at PageID #15.)  Finally, the 2020-21 IEP "also checked that [J.C.M.] did not require specially designed physical education, nor did he require ESY [extended school year] services throughout the summers."  (*Id.*)  Plaintiff alleges that the 2020-21 IEP "failed to recommend evidence-based methodologies to assist [J.C.M.] with learning, as well as to address recognized behaviors that were interfering with [his] ability to learn, and failed to include goals and services to address adaptive behaviors and self-help skills, despite serious deficits indicated in those areas."  (*Id.*)

Another annual review was held on February 22, 2021, to develop an IEP for February 2021 through February 2022 ("2021-22 IEP").  (*Id.*)  According to Plaintiff, "[t]his IEP was almost identical to the 2020-21 IEP" and "failed to provide the intensive services their own ETRs repeatedly urged, with extremely limited sessions in speech and intervention, and no direct physical or occupational therapy services."  (*Id.*)

### B. Administrative Proceedings

On February 14, 2022, Plaintiff filed a Demand for Due Process Hearing with CMSD.  (*Id.* at PageID #2.)  On March 11, 2022, Plaintiff filed an Amended Demand for Due Process Hearing with CMSD.  (*Id.* at PageID #3.)  On May 3, 2022, Plaintiff filed a second Demand for Due Process Hearing with CMSD and, two days later, filed a Motion for Consolidation of the cases which was granted by the Impartial Hearing Officer ("IHO").  (*Id.*)  Between May 11, 2022, and October 7, 2022, the IHO conducted twelve hearings during which twenty witnesses were called and 1917 pages of transcript were recorded.  (*Id.*)

4

Plaintiff's Demands for Due Process Hearing included various claims against CMSD and requests from the IHO.  (*Id.* at PageID #3.)  The parties dispute the total number of claims that were asserted.  Specifically, Plaintiff asserts that there were 13 claims alleging denials of a Free and Appropriate Education ("FAPE") included in Plaintiff's Amended Due Process Complaint, while CMSD contends that Plaintiff asserted 58 claims against it.  (*See* Doc. No. 24 at PageID #229) (discussing parties' positions).  Notwithstanding the disagreement as to the exact number or characterization of the claims, the parties agree as a general matter that the claims involve Plaintiff's allegations that CMSD denied J.C.M. a FAPE during the years 2019-2023, as well as Plaintiff's request for an order directing CMSD to take certain remedial actions or provide other services or necessary relief.  (Doc. No. 1 at PageID #3, 16–20; Doc. No. 8 at PageID #68–72.)

On March 3, 2023, the IHO issued a 342-page decision.  (Doc. No. 1 at PageID #4.)  Plaintiff and Defendant agree that at a minimum, the IHO ruled in favor of Plaintiff on five of the claims brought.  (*See id.*; Doc. No. 8 at PageID #72.)  Although Plaintiff requested, in relevant part, that the IHO order CMSD to provide J.C.M. a "[d]aily 1:1 trained aide throughout the day," the IHO did not order such relief.  (*See* IHO Decision, pg. 323.)

In his decision, the IHO evaluated whether the February 15, 2022 IEP ("February 2022 IEP") provided an appropriate program and placement.  (*See id.* at pg. 314.)  In relevant part, the IHO concluded that the testimony of Dr. Howard Shane specifically (Plaintiff's sole expert witness) "did not establish that the [February 2022 IEP] failed to provide the Student with an appropriate program and placement during the 2021-2022 school year period."  (*Id.* at pg. 315.)  The IHO indicated numerous bases for this decision, including the following:

"[Dr. Shane] had never met the Student in person, had not conducted any assessments or evaluations of the Student and had not observed the Student in the classroom. He had not

5

interviewed the Petitioner nor had any conversations with the Petitioner. He had no knowledge of the Student that was based upon his direct assessment or evaluation of the Student. He had only reviewed some of the Student's education records for approximately two to three hours in preparation for his testimony at this hearing and had not been present at this hearing any time prior to his testimony.

He explained how children with disabilities are evaluated in the Augmentative Communication Program at Boston Children's Hospital, but his testimony did not establish whether this method of evaluation is the usual and customary ACC evaluation method or a hospital-based evaluation program that far exceeds the usual and customary ACC evaluation method.

His education record review included the Student's February 15, 2022 IEP. His testimony that this IEP provided only 200 minutes of specially designed instruction over the course of a year was incorrect."

(*Id.* at pg. 314) (citations omitted).

On March 20, 2023, Plaintiff filed a Notice of Appeal with the Ohio Department of Education Office for Exceptional Children.  (Doc. No. 1 at PageID #5; Doc. No. 8 at PageID #73.)  On September 21, 2023, the State Level Review Officer ("SLRO") issued a decision affirming the IHO's decision in its entirety.  (*Id.*)

### C.     Proceedings in this Court

On December 1, 2023, M.F., in her own capacity and on behalf of J.C.M., filed a Complaint against CMSD in this Court seeking judicial review of the administrative decisions.  (Doc. No. 1.)  In the Complaint, Plaintiff sets forth various claims under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1415 *et. seq.* and its implementing state and federal regulations.  (*Id.* at PageID #1.)  Plaintiff alleges that J.C.M. was denied a FAPE for the 2019-2023 school years.  (*Id.* at PageID #20.)  Plaintiff further alleges, in relevant part, that the IHO and SLRO erred in failing to order CMSD to "provide J.C.M. with the needed service of a 1:1 paraprofessional …" (*Id.*)

On April 29, 2024, CMSD filed an Amended Answer ("Answer") and Amended Third-Party Complaint against Third-Party Defendants Cuddy Law Firm ("Cuddy") and Alia E. Green ("Green"). (Doc. No. 8.)  On June 28, 2024, Plaintiff filed a Motion to Strike Portions of Defendant's Answer and Cuddy filed a Third-Party Motion to Strike Third-Party Complaint (collectively, "Motions to Strike").  (Doc. Nos. 10, 11.)  On October 24, 2024, the Court issued a Memorandum Opinion and Order denying the Motions to Strike.  (Doc. No. 24.)

On January 23, 2025, the Court conducted a telephonic case management conference ("CMC") with the parties.  (*See* 1/23/2025 Docket Entry.)  At the CMC, the parties indicated that they intended to file motions to supplement the record.  (*Id.*)  Accordingly, the Court set a deadline of March 14, 2025, for the parties to file their motions to supplement, and the Court indicated that it would set a schedule for the parties to file their merits briefs following a ruling on the motions to supplement.  (*Id.*)

On March 13, 2025, Plaintiff filed her Motion to Supplement.  (Doc. No. 34.)  On March 28, 2025, CMSD filed its Opposition to Plaintiff's Motion ("CMSD's Opposition").  (Doc. No. 37.)  On April 3, 2025, Plaintiff filed her Reply in Support of her Motion ("Plaintiff's Reply").  (Doc. No. 38.)

On March 14, 2025, CMSD also filed its own Motion to Supplement.  (Doc. No. 35.)  On March 28, 2025, Plaintiff filed her Opposition to CMSD's Motion ("Plaintiff's Opposition").  (Doc. No. 36.)  On April 4, 2025, CMSD filed its Reply in Support of its Motion ("CMSD's Reply").  (Doc. No. 39.)

Accordingly, Plaintiff and CMSD's Motions are ripe for review.

## II.    Statutory Framework

"The Individuals with Disabilities Education Act ('IDEA'), 20 U.S.C. §§ 1400–1482, offers state governments federal funding to help educate children with disabilities." *Gibson v. Forest Hills Local School Dist. Bd. of Educ.*, 655 Fed. Appx. 423, 426 (6th Cir. 2016) (citing 20 U.S.C § 1411(a)(1). In exchange for those funds, participating states must adopt policies and procedures that implement the Act's promise of making a FAPE available to every eligible child. *See* 20 U.S.C. § 1412(a)(1)(A). Ohio has opted to receive IDEA funds. *See Gibson*, 655 Fed. Appx. at 426 (citing *Bd. of Educ. of Austintown Local Sch. Dist. v. Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities*, 613 N.E.2d 167, 172 (Ohio 1993)).

"The lynchpin of the IDEA is a document known as the 'individualized educational program' ('IEP')." *Gibson*, 655 Fed. Appx. at 426 (citing *Honig v. Doe*, 484 U.S. 305, 311–12 (1988). Each academic year, an "IEP Team" comprised of an eligible child's parents, his teachers, a representative of the local educational agency, and, whenever appropriate, the child himself, meets to discuss the child's progress and educational goals. 20 U.S.C. § 1414(c)(1), (d)(1)(A)–(B), (d)(4)(A); Ohio Admin. Code § 3301–51–07(I)(1), (J)(2)(a). The product of these meetings is the IEP, a document that evaluates the child's academic achievement and functional performance, as well as his short-term and long-term goals. 20 U.S.C. § 1414(d)(1)(A)(i)(I)–(II), (d)(3)(B); Ohio Admin. Code § 3301–51–07(E)(1)(b)–(c). The IEP also specifies the services that the school will provide to help the child to accomplish his goals and sets forth the criteria that the IEP Team will use to evaluate the child's progress over the course of the coming year. 20 U.S.C. § 1414(d)(1)(A)(i)(III)–(IV); Ohio Admin. Code § 3301-51-07(E)(1)(d)–(e).

When parents feel that a school district has failed to comply with its obligations under the IDEA, they may file an action in federal court.  20 U.S.C. § 1415(i)(2)(A)–(B); Ohio Admin. Code § 3301–51–05(K)(16)(a)–(b).  However, "because federal courts are 'generalists with no expertise in the educational needs' of students who have disabilities, the IDEA requires participating states to provide an impartial 'due process hearing' to any parent who believes her child has not received a FAPE and makes the exhaustion of that remedy a prerequisite for review in federal court."  *Gibson*, 755 Fed. Appx. at 427.  *See also Burilovich v. Bd. of Educ. of Lincoln Consol. Schools,* 208 F.3d 560, 566 (6th Cir. 2000).

Ohio has created a two-stage procedure for resolving IDEA disputes.  If an aggrieved party files a due process demand or complaint, the Ohio Department of Education appoints an "impartial hearing officer" ("IHO"), a neutral arbiter with both legal training and familiarity with the IDEA and attendant state and federal regulations, to adjudicate the dispute.  *See Gibson*, 755 Fed. Appx. at 427; Ohio Admin. Code § 3301–51–05(K)(10)(c)(i).  After receiving evidence and compiling a record, the IHO renders a decision as to whether the school district has denied the pupil a FAPE.  Ohio Admin. Code § 3301–51–05(K)(10)–(13).  Any party who is dissatisfied with the IHO's decision may file an appeal with the Ohio Department of Education, which then appoints another neutral arbiter called a "state level review officer" ("SLRO") to review the record and issue an independent decision on the merits. Ohio Admin. Code § 3301–51–05(K)(13)(b).

A party may then challenge the SLRO's decision in federal district court.  Ohio Admin. Code § 3301–51–05(K)(16)(a)–(b).  In such an action, the IDEA instructs that a federal court: (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief

9

as the court determines is appropriate.  Ohio Admin. Code § 3301–51–05(K)(16)(c)(i)–(iii) (mirroring 20 U.S.C. § 1415(i)(2)(C)(i)–(iii)).

## III.    Analysis

Plaintiff and CMSD have each independently moved to supplement the administrative record. (Doc. Nos. 34, 35.)  The Court will address each Motion separately, below.

### A.    CMSD's Motion to Supplement

The Court first turns to CMSD's Motion to Supplement.  In its Motion, CMSD seeks to supplement the record to include documents "reflecting the grounds for appeal and assignments for error made by Plaintiffs before the Ohio Department of Education's Office for Exceptional Children" as well as the "briefing presented by the parties to the SLRO and the SLRO's decision," which are currently missing from the current administrative record.  (Doc. No. 35 at PageID #353–54.)  CMSD maintains that these documents must necessarily be included in the administrative record because Plaintiff is challenging the decisions made by the SLRO.  (*Id.* at PageID #357–58.)

In her Opposition, Plaintiff indicates that she does not oppose the inclusion of this additional evidence into the record.  (Doc. No. 36 at PageID #491.)  Plaintiff notes that the evidence in question "should have been included in the administrative record from the outset but for an error by the state agency responsible for certifying and submitting the record to the Court," and that the relief is "more properly characterized as completing the record rather than supplementing it."  (*Id.* at PageID #491–92.)  Finally, Plaintiff asserts that the records attached to CMSD's Motion should have been redacted. (*Id.* at PageID #495.)

In its Reply, CMSD points to Plaintiff's indication that they "do not oppose the inclusion of the additional evidence identified in the [M]otion."  (Doc. No. 39 at PageID #516–17.)  CMSD also

10

contends that it was not necessary to redact the documents pursuant to Local Rule 8.1 and Fed. R. Civ. P. 5.2, but that it "has no objection to doing so and has indicated as much to Plaintiffs' counsel." (*Id.* at PageID #519.)

When appealing the decisions of an IHO and SLRO to a federal district court, the court "shall receive the records of the administrative proceedings."  20 U.S.C. § 1415(i)(2)(C)(i); Ohio Admin. Code § 3301–51–05(K)(16)(c)(i).  Here, neither party disputes that the information CMSD seeks to include should have been included in the administrative record from the outset but for an agency error.  The Court thus grants CMSD's Motion to include such information in the record.  Finally, the Court finds that it is appropriate to redact J.C.M's identifying information from such records.[5]

Accordingly, the Court hereby grants CMSD's Motion.[6]

---

[5] In her Opposition, Plaintiff contends that CMSD should have redacted the proposed documents.  (Doc. No. 36 at PageID #494.)  In its Reply, CMSD indicates that it does not oppose redaction, but maintains that it was not required to do so. (Doc. No. 39 at PageID #518–19.)  CMSD acknowledges that Local Rule 8.1(a) requires redaction for the names of minor children but contends that Local Rule 8.1(d) does not extend this requirement to filings set forth in Fed. R. Civ. P. 5.2(b)(1)-(6), which includes "the record of an administrative or agency proceeding."  (*Id.*)  CMSD also notes that J.C.M. is now over the age of 18.  (*Id.* at PageID #519.)  While it is true that Rule 5.2(b) exempts from redaction the "record of an administrative or agency proceeding," Rule 5.2(e) permits a court by order in a case to "require redaction of additional information."  Fed. R. Civ. P. 5.2(e).  In its Memorandum Opinion and Order dated October 24, 2024, the Court indicated its concerns with filing "sensitive identifying information" related to J.C.M. on the public docket, given that J.C.M. was a minor and pseudonyms had been used in every filing thus far.  (Doc. No. 24 at PageID #240.)  The Court then restricted the identifying information from the public docket and "remind[ed] counsel to exercise greater caution when filing sensitive information going forward."  (*Id.*)  Although J.C.M. may have since reached the age of 18, the Court concludes that pseudonyms are nevertheless still appropriate given that the documents in this case wholly relate to the period in which he was a minor.  Accordingly, the Court will only admit the redacted version of CMSD's proposed records (Doc. No. 39-1) and has since restricted from the public docket the unredacted version attached to CMSD's Motion (Doc. No. 35-1).  Finally, to avoid any confusion going forward, the Court hereby orders that M.F. and J.C.M.'s identifying information shall be redacted from any future public filings.

[6] Finally, the Court notes that the parties raise numerous other arguments regarding: (i) whether this should have been characterized as a "Motion to Supplement the Record" or a "Motion to Complete the Record"; (ii) whether the parties were required to "meet-and-confer" regarding the records sought to be included by CMSD or whether "unnecessary motion practice" has transpired; and (iii) the appropriateness of CMSD's discussion as to the relevance of such information.  (*See generally* Doc. Nos. 35, 36, 39.)  The Court finds it unnecessary to address these arguments.  Further, the Court declines at this juncture to make any determinations regarding any interpretation of the newly included information.  The parties will have the opportunity to present their respective positions in their merit briefs for this Court's review.

### B.      Plaintiff's Motion to Supplement

The Court next turns to Plaintiff's Motion to Supplement.  (Doc. No. 34.)  In her Motion, Plaintiff seeks to include two sets of documents: (1) documents related to an Amended 2022-23 IEP Plan dated November 3, 2022,[7] including two pages of the plan itself and a "prior notice" associated therewith (hereinafter "Amended 2022-23 IEP documents") (Doc. Nos. 34-1, 34-2); and (2) purported emails from Michelle Nameth Baskin to Coralise M. Terwilliger-Seman dated May 1, 2023 (hereinafter "Emails") (Doc. No. 34-3).  The Court will address each set of documents in-turn, below.

### 1.      Amended 2022-23 IEP Documents

Plaintiff first seeks to supplement the record with the Amended 2022-23 IEP documents.  CMSD contends that these documents should not be included in the record for two reasons.  First, CMSD asserts that the Amended 2022-23 IEP documents "risk confusing the issues and changing the character of this proceeding."  (Doc. No. 37 at PageID #501.)  Second, CMSD argues that Amended 2022-23 IEP documents are "incomplete portions of other documents" and should be excluded under the "best evidence rule."  (*Id.* at PageID #500.)  The Court will address each argument, below.

### a.  Relevance to Issues Before Court

In her Motion, Plaintiff argues that the Amended 2022-23 IEP documents are relevant to the Court's review in determining whether the IHO and SLRO erred in "failing to find that [J.C.M.]

---

[7] In her Motion, Plaintiff indicates that these documents are dated November 7, 2022.  (Doc. No. 34 at PageID #335.)  Later in her Motion, Plaintiff contends that such documents show that J.C.M.'s IEP was amended on November 2, 2022.  (*Id.* at PageID #340.)  Upon the Court's independent review, the documents indicate that the date of amendment for the Amended 2022-23 IEP and date of notice was November 3, 2022.  (*See* Doc. No. 34-1 at PageID #346; Doc. No. 34-2 at PageID #348.)  The Court will thus refer to November 3, 2022 as the appropriate date for these documents, and the parties may clarify as necessary in their merit briefs to be submitted to the Court.

required a 1:1 paraprofessional[8] in order to receive his [FAPE] and in failing to order as relief the requested additional evaluations and 1:1 paraprofessional … [and] an additional year of eligibility for services for each year that a 1:1 paraprofessional was denied." (Doc. No. 34 at PageID #336.) Plaintiff asserts that the Amended 2022-23 IEP documents indicate that CMSD's later decision to amend the IEP to include a 1:1 paraprofessional "was based on the same documents used to develop the original 2022-2023 IEP." (*Id.* at PageID #340.) In other words, Plaintiff contends that that CMSD relied on the "then-current IEP and [2020] ETR data to reach this determination, both of which were presented in the hearing before IHO Alexander, during which Defendant argued [J.C.M.] did not require a 1:1 paraprofessional, and the IHO declined to order one as part of the relief." (*Id.* at PageID #342.) Plaintiff maintains that the Amended 2022-23 IEP documents, which indicate that J.C.M. "requires a one-to-one (1:1) paraprofessional," "underscore CMSD's awareness of the severity of [J.C.M.'s] needs and the essential role a 1:1 paraprofessional played in supporting him within the school environment as well as his need for additional evaluations," "provide compelling evidence that CMSD knew [J.C.M.] required this support but failed to provide it until after the hearing concluded," and show that the "[IHO] and [SLRO] failed to recognize the necessity of this support in their decisions." (*Id.* at PageID #343; Doc. No. 34-2 at PageID #348.)

---

[8] Upon review of the record, the Court notes that the IHO and SLRO appear to interchangeably use the term "1:1 paraprofessional" and "1:1 aide" in relation to Plaintiff's requested relief. The Court presumes for purposes of this Opinion that this interchangeable use refers to the same 1:1 support requested by Plaintiff for J.C.M. *See also* Ohio Admin. Code § 3301–51–01(B)(47) ("'Paraprofessional services' include services provided by educational agency employees who are adequately trained to assist in the provision of special education to children with disabilities. Paraprofessionals work under the supervision of teachers, intervention specialists, and/or related service providers. Other titles used to identify these service providers include teacher assistants, *educational aides*, school psychology aides, occupational therapy assistants, physical therapist assistants, and job coaches.") (emphasis added).

In its Opposition, CMSD argues that the Amended 2022-23 IEP documents are not probative of the actual question before the Court and "risk confusing the issues and changing the character of this proceeding."  (Doc. No. 37 at PageID #501.)  CMSD contends that the "issue surrounding the 1:1 paraprofessional is *not* whether a 1:1 paraprofessional was needed or beneficial," but rather "whether a 1:1 paraprofessional was appropriate 'compensation' … for the denial of FAPE."  (*Id.*)  Thus, CMSD asserts that the Amended 2022-23 IEP documents "at most, are evidence that CMSD believed that a 1:1 paraprofessional was potentially beneficial and warranted."  (*Id.*)  CMSD posits that this "is not new or a smoking gun [as] CMSD offered a 1:1 paraprofessional in its April 1, 2022 offer of settlement," and that adding these documents to the administrative record "risks confusing the questions before the Court."  (*Id.* at PageID #501–02.)

In her Reply, Plaintiff maintains that the Amended 2022-23 IEP documents are "directly tied to the record already before the Court."  (Doc. No. 38 at PageID #510.)  Specifically, Plaintiff contends that these documents are "an amendment to the February 15, 2022 IEP, which was presented at the due process hearing before [the] IHO," and that "[t]he November 2022 amendment added a 1:1 paraprofessional to the February 2022 IEP based on the same evaluative data available to CMSD when it continually failed to provide that support."  (*Id.*)  Plaintiff further asserts that it has "consistently maintained that CMSD's failure to provide a 1:1 paraprofessional during the school year at issue, including after J.C.M. had a serious accident in his wheelchair, was itself a denial of FAPE," noting that CMSD's position that "the matter of the 1:1 paraprofessional relates only to the relief ordered in this matter … ignores the fact that the failure of CMSD to provide a 1:1 paraprofessional on any of J.C.M.'s relevant IEPs was itself a denial of FAPE."  (*Id.* at PageID #512–13.)

14

"A district court reviewing an ALJ's [administrative law judge] decision in an IDEA case '(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" *Somberg on behalf of Somberg v. Utica Community Schools*, 908 F.3d 162, 174 (6th Cir. 2018) (citing 20 U.S.C. § 1415(i)(2)(C)).  In doing so, "[t]he court may consider evidence outside of the administrative record and issues that were not presented to the ALJ if they are relevant to the issues that were before the ALJ." *Id.* (quoting *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 850–51 (6th Cir. 2004)).

The Sixth Circuit "has taken an expansive view of the scope of additional evidence that may supplement the administrative record" and "has declined to adopt the narrow position of other circuits 'that additional evidence is admissible only in limited circumstances, such as to supplement or fill in the gaps in the evidence previously introduced.'" *Adam Wayne D. ex rel. David D. v. Beechwood Independent School Dist.*, 482 Fed. App'x. 52, 58 (6th Cir. 2012) (citing *Deal*, 392 F.3d at 850). Moreover, evidence that postdates the ALJ's decision may be "admissible in IDEA cases as long as it is helpful in determining the validity of the original IEP." *Deal*, 392 F.3d at 852 (citing *Metropolitan Bd. of Public Educ. v. Guest*, 193 F.3d 457, 463 (6th Cir. 1999)); *see also id.* ("[T]he mere fact that [a witness] was not involved in the case until after the ALJ's decision was entered is not determinative on the issue of the admissibility of her testimony.").

"When a district court looks beyond the administrative record, its decision to do so is reviewed under the abuse-of-discretion standard." *Somberg*, 908 F.3d at 174.  "A district court could … be found to have abused its discretion if it allowed additional evidence to change the character [of] the hearing from one of review to a trial de novo." *Id.* at 174–75.  "The district court must therefore

15

avoid 'using additional evidence to rule upon issues beyond those presented to the ALJ." *Id.* at 175

(citing *Guest*, 193 F.3d at 463); *see, e.g.*, *id.* (finding that the district court "determin[ing] the amount

of educational loss that [student] had suffered due to the inadequate IEP … [was] an issue inextricably

linked to the ALJ's ruling on whether [student] was denied a FAPE for that school year").

The Court finds it appropriate to supplement the administrative record with the Amended

2022-23 IEP documents.  (*See* Doc. Nos. 34-1, 34-2.)  First, upon review of the administrative record,

the Court finds that the issue of whether CMSD's failure to provide a 1:1 paraprofessional was itself

a denial of FAPE was presented to the IHO.[9]  Second, even if the 1:1 paraprofessional issue only

existed within the context of whether the IHO should have found such relief to constitute an

appropriate "remedy" to a denial of FAPE, the Court still finds that issue to be "relevant to the issues

that were before the ALJ."  *Somberg*, 908 F.3d at 174.  The IDEA instructs district courts, upon

review of the administrative record and additional evidence requested by the parties, to "grant such

relief as the court determines is appropriate."  § 1415(i)(2)(C)(iii).  Thus, if Plaintiff can demonstrate

a denial of FAPE, it would be within the Court's scope of review to evaluate whether a 1:1

paraprofessional is appropriate "relief" under § 1415(i)(2)(C)(iii).[10]

---

[9] (*See, e.g.*, Petitioner's Closing Brief to IHO, pg. 79) ("[T]he District failed to evaluate whether a 1:1 aide was an appropriate component of [J.C.M.'s] special education program. At the very least, [CMSD] was obligated to assess and evaluate whether a 1:1 aide was appropriate to offer [J.C.M.] a FAPE … The fact that [J.C.M.] was not engaging in learning activities in the absence of 1:1 support clearly and unequivocally demonstrates that such service was necessary and appropriate in order to allow him to access his education, and provide him with a FAPE. *In addition to being necessary to offer [J.C.M.] a FAPE, a 1:1 aide was necessary* to ensure [J.C.M.'s] safety in the school setting …") (emphasis added); (*see also id.* at pgs. 59–60, 78–79, 83, 88, 92) (discussing J.C.M.'s need for 1:1 aide and CMSD's failure to provide as such).

[10] Similarly, the issue of whether J.C.M. was entitled to a 1:1 paraprofessional could be relevant to the Court's decision to "grant such relief as the court determines is appropriate" because the Sixth Circuit has concluded that a district court "could appropriately award judgment for what it would now cost [a student] to obtain the educational services she says she ought to have received earlier …" § 1415(i)(2)(C)(iii); *Somberg*, 908 F.3d at 176; *see also id.* ("[T]he record supports the district court's exercise of discretion in this case to place the disabled child 'in the same position' that he 'would have occupied but for the school district's violations of IDEA.'").

Importantly, it is worth noting that a review of the record reveals that the scope of the IHO's relief (or lack thereof) and request for a 1:1 paraprofessional was presented to the SLRO. (*See* Doc. No. 39-1 at PageID #648–49.) Specifically, the SLRO noted that the "remainder of Petitioner's assignments of error relate to things that the IHO did not order; … failing to order Respondent to provide a 1:1 paraprofessional for the denial of FAPE." (*Id.* at PageID #648.) The SLRO went on to indicate that "great latitude should be given to the discretion of the IHO … [as] [i]t is greatly subjective" and "absent a clear abuse of that discretion or clear error," the SLRO would not "substitute what [he] might order as a substitute for the IHO's order of compensation." (*Id.* at PageID #649.) Thus, while the SLRO ultimately deferred to the IHO as the initial fact finder, the mere fact that the SLRO addressed the issue and found no "clear abuse of … discretion or clear error" supports, at a minimum, that the Amended 2022-23 IEP documents are "relevant to the issues that were before the ALJ." (*Id.*); *Somberg*, 908 F.3d at 174.

Finally, the Court is not persuaded by CMSD's arguments to the contrary. First, CMSD asserts that Plaintiff fails to explain why the Amended 2022-23 IEP documents were not presented to the SLRO, why they are relevant to the Court's review of those rulings, and that considering these documents "risk[s] converting this proceeding to a trial de novo." (Doc. No. 37 at PageID #499–500.) Yet there is no requirement for evidence to have been presented previously[11]—rather, evidence "*not presented to the ALJ*" may be considered so long as it is "*relevant* to the issues that were before the ALJ." *Somberg*, 908 F.3d at 174 (emphasis added). Moreover, the Court finds that the potential

---

[11] Moreover, Plaintiff cites various delays in obtaining these documents from CMSD, including CMSD's "failure to cooperate when Plaintiff sought the full document in January 2025." (*See* Doc. No. 38 at PageID #509.) CMSD did not seek leave to file a sur-reply to contest or deny this allegation.

relevance of the documents is adequately explained above.[12]  *See supra*.  Finally, the Court is not convinced that the few pages Plaintiff seeks to admit will "risk converting this proceeding to a trial de novo" as CMSD contends.  Notwithstanding that Plaintiff merely seeks to add a few pages to a record already spanning thousands of pages,[13] these documents merely address issues previously presented before the IHO and SLRO or relevant to this Court's review under § 1415(i)(2)(C)(iii).  And the Sixth Circuit has permitted courts to rely on additional evidence that contradicts an ALJ's findings, instructing that "where the district court hears additional evidence it is 'free to accept or reject the agency findings depending on whether those findings are supported by the new, expanded record.'"  *Deal v. Hamilton County Dept. of Educ.*, 258 Fed. App'x. 863, 865 (6th Cir. 2008).

Accordingly, the Court concludes that the Amended 2022-23 IEP documents are relevant to this Court's review.

### b.  Best Evidence Rule

The Court next turns to CMSD's arguments regarding the "best evidence rule."  (Doc. No. 37.)

In its Opposition, CMSD asserts that the Amended 2022-23 IEP documents should be excluded as being "incomplete portions of other documents."  (Doc. No. 37 at PageID #500.)  Specifically, CMSD contends that these documents "appear to be pictures of certain pages of a

---

[12] *See also Guest*, 193 F.3d at 463 (finding after the fact evidence to be admissible in IDEA cases as long as it is helpful in determining the validity of the original IEP); *Deal*, 392 F.3d at 852 (similar); *Somberg*, 908 F.3d at 175 ("Evidence of his abilities and progress in the years before and *after* the IDEA violation is therefore relevant in determining whether he suffered a loss during the 2012-2013 school year.") (emphasis added).

[13] *Cf. Dougall v. Copley Fairlawn City School District Board of Education*, 2019 WL 1243040, at *4 (N.D. Ohio Mar. 18, 2019) (denying motion to supplement where "[t]he administrative record … is already 3,877 pages in length, and plaintiffs seek to add another 800+ pages").

document"—namely, "pages 25 and 26 of an IEP" and "pages 1 and 3 of a 26 page [sic] IEP (perhaps the same IEP from which [Doc. No. 34-1] was taken)." (*Id.* at PageID #497, 500.) Thus, CMSD argues that the "best evidence rule" requires an "original writing," which it submits Plaintiff has failed to provide. (*Id.* at PageID #500.)

In her Reply, Plaintiff asserts that CMSD "fails to acknowledge that it refused to produce the entire IEP when asked in January 2025, despite CMSD being the author and custodian of the document." (Doc. No. 38 at PageID #510.) Specifically, Plaintiff contends that "[o]n January 17, 2025, Plaintiff provided Defendant with a draft of its Motion to Supplement … [and] specifically asked Defendant to produce the full IEP, which CMSD authored and possesses in its entirety." (*Id.*) According to Plaintiff, "Defendant did not express any concerns about the documents in response to Plaintiff's January 17, 2025 email or during a subsequent phone call between counsel." (*Id.*) Plaintiff thus argues that "Defendant now faults Plaintiff for submitting excerpts, even though it has possession of the full documents, and seeks to exclude the very evidence it refused to produce." (*Id.*)

CMSD did not seek leave to file a sur-reply to contest or deny these allegations.

Federal Rule of Evidence 1002 provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. In relevant part, however, under Federal Rule of Evidence 1004, "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if: (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith; *** [or] (c) the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing." Fed. R. Evid. 1004.

The Court finds that the Amended 2022-23 IEP documents are not barred by the best evidence rule.  Here, Plaintiff represents that the original documents could not be obtained because CMSD refused to provide them.  (Doc. No. 38 at PageID #510.)  CMSD does not challenge this narrative. Nor has CMSD claimed any bad faith on behalf of Plaintiff as to the "incomplete" documents.  (Doc. No. 37 at PageID #500.)  Accordingly, pursuant to Rule 1004, the Amended 2022-23 IEP documents are admissible.  To the extent that CMSD takes issue with the "incomplete" documents, it may produce the original for supplementation into the record.[14]

Accordingly, for the foregoing reasons and in light of the Sixth Circuit's "expansive view of the scope of additional evidence that may supplement the administrative record," the Court admits the Amended 2022-23 IEP documents into the record.  *Adam Wayne D.*, 482 Fed. App'x. at 58.  The Court emphasizes that this holding is limited to resolving admissibility—namely, whether the documents sought to be introduced into the record "are relevant to the issues that were before the ALJ."  *Somberg*, 908 F.3d at 174.  The Court has made no determination at this juncture as to the interpretation, weight, or evidentiary value of these documents—rather, the parties may present their respective positions on those issues in their merits briefs.

### 2.    Emails

The Court next turns to the admissibility of the emails attached to Plaintiff's Motion.  (Doc. No. 34-3 at PageID #350–51.)

In her Motion, Plaintiff seeks to admit "an email between BCBA Michelle Nameth Baskin [hereinafter "Baskin"] and CMSD show[ing] that [J.C.M.] required additional evaluations to address

---

[14] *See* Rule 1004, Advisory Committee Notes, 1972 Proposed Rules, Note to Paragraph (3) ("A party who has an original in his control has no need for the protection of the rule if put on notice that proof of contents will be made. He can ward off secondary evidence by offering the original.").

20

his communication needs." (Doc. No. 34 at PageID #341.)  Plaintiff contends that the IHO discredited the testimony of Dr. Shane, Plaintiff's sole expert witness, because "Dr. Shane did not meet the student personally, evaluate him directly, or observe him."  (*Id.* at PageID #343.)  Thus, Plaintiff asserts that "Baskin's email, sent after she observed [J.C.M.], demonstrates that despite having not met [J.C.M.] in person, Dr. Shane's testimony that he required additional evaluation in [the areas of speech-language and for a communication device] supported the Plaintiff's claim and request for relief."  (*Id.*)

In its Opposition, CMSD argues that Plaintiff understates the IHO's reasons for discrediting Dr. Shane.[15]  (Doc. No. 37 at PageID #502.)  CMSD acknowledges that the IHO discounted Dr. Shane's testimony because he did not meet J.C.M. in person and never personally observed or evaluated J.C.M.  (*Id.*)  However, CMSD contends that the IHO "*also* found that Dr. Shane failed to establish that his method of evaluation is the usual and customary evaluation ACC method, rather than a hospital-based evaluation that far exceeded the usual and customary ACC evaluation method."  (*Id.*)  Further, CMSD asserts that the IHO "spotlighted several instances in which Dr. Shane's testimony was simply incorrect based on the facts of the case."  (*Id.*)  Accordingly, CMSD submits that the emails—which "[b]y [Plaintiff's] own admission" are offered as evidence "to bolster the discounted testimony of her expert"—should be excluded because the IHO's "decision to give little weight to Dr. Shane's testimony rested on much more than Dr. Shane's lack of personal observation or assessment."  (*Id.* at PageID #502–03.)

---

[15] CMSD also argues that Plaintiff overstates the significance of the emails, that Baskin has not been qualified as an expert, and that the emails are incomplete excerpts from a larger chain.  (Doc. No. 37 at PageID #502–503.)  However, as explained further below, the Court finds it unnecessary to reach these issues.

In her Reply, Plaintiff reiterates that she "does not submit [the emails] as expert testimony," but "[r]ather, the email corroborates Dr. Shane's testimony—discounted by the IHO because Dr. Shane did not observe the student—by showing that a professional who did observe J.C.M. reached a similar conclusion."  (Doc. No. 38 at PageID #511); (*see also id.* at PageID #513 ("But Plaintiff does not offer the email as expert testimony, it is submitted as corroborating evidence supporting Dr. Shane's opinion that CMSD failed to appropriately address J.C.M.'s communication needs.").)

"[W]hile the court must give the SLRO deference in matters requiring educational expertise, the Court will not 'second guess' credibility determinations made by the IHO, who was best situated to assess the credibility of testifying witnesses."  *Dougall v. Copley-Fairlawn City School District Board of Education*, 2020 WL 435385, at *16 (N.D. Ohio Jan. 28, 2020) (Barker, J.) (citing cases).

Upon review of the record, the Court finds that the emails should not be supplemented into the record because it is not appropriate to "second guess" the IHO's credibility determination as to Dr. Shane.  In his decision, the IHO provided the following reasons in relation to his decision to discount the testimony of Dr. Shane:

> "[Dr. Shane] had never met the Student in person, had not conducted any assessments or evaluations of the Student and had not observed the Student in the classroom. He had not interviewed the Petitioner nor had any conversations with the Petitioner. He had no knowledge of the Student that was based upon his direct assessment or evaluation of the Student. He had only reviewed some of the Student's education records for approximately two to three hours in preparation for his testimony at this hearing and had not been present at this hearing any time prior to his testimony.
>
> He explained how children with disabilities are evaluated in the Augmentative Communication Program at Boston Children's Hospital, but his testimony did not establish whether this method of evaluation is the usual and customary ACC evaluation method or a hospital-based evaluation program that far exceeds the usual and customary ACC evaluation method.
>
> His education record review included the Student's February 15, 2022 IEP. His testimony that this IEP provided only 200 minutes of specially designed instruction over the course of a year was incorrect."

22

(*See* IHO Decision at pg. 314) (citations omitted).  The IHO's explanation for discounting Dr. Shane's testimony thus goes beyond the sole issue of Dr. Shane not having evaluated J.C.M. directly. Specifically, the IHO provided a host of other reasons including that Dr. Shane: (i) "had only reviewed *some* of [J.C.M.'s] education records for approximately two to three hours in preparation for his testimony …"; (ii) did not establish whether the evaluation procedure he testified to "is the usual and customary ACC evaluation method …"; and (iii) incorrectly testified that the February 15, 2022 IEP "provided only 200 minutes of specially designed instruction over the course of a year" when in-fact it "required 400 minutes per week for specially designed instruction."  (*Id.* (emphasis added).)  In other words, even if Plaintiff's proposed emails remedied the concern regarding Dr. Shane's lack of direct assessment or evaluation of J.C.M., there exist numerous other independent reasons why the IHO discounted Dr. Shane's testimony.

Accordingly, the Court concludes that it would not be appropriate to "second guess" the credibility determination made by the IHO as to Dr. Shane even if the emails were submitted. *Dougall*, 2020 WL 435385, at *16 (citing cases).  As Plaintiff specifically offers the emails "as corroborating evidence supporting Dr. Shane's opinion," and given that the Court declines to "second guess" the credibility determination of Dr. Shane, the Court hereby declines to admit the emails into the record.[16]  (Doc. No. 38 at PageID #513).

## IV.    Conclusion

For the foregoing reasons, CMSD's Motion to Supplement is **GRANTED** and Plaintiff's Motion to Supplement is **GRANTED IN PART** and **DENIED IN PART**.  The Court admits

---

[16] The Court finds it unnecessary to address the parties' remaining arguments as to the Emails.

CMSD's redacted supplemental record.  (Doc. No. 39-1.)  The Court also admits the Amended 2022-23 IEP documents.  (Doc. Nos. 34-1, 34-2.)  The Court declines to admit Plaintiff's submitted emails. (Doc. No. 34-3.)

**IT IS SO ORDERED.**

Dated: July 30, 2025                                          *s/ Pamela A. Barker*
                                                                        PAMELA A. BARKER
                                                                        UNITED STATES DISTRICT JUDGE

24