# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| M.F. individually and on behalf | § | |
| of minor child, JCM, an individual with | § | |
| a disability, | § | |
|     *Plaintiff,* | § | CIVIL ACTION NO: 1:23-cv-02308-PAB |
| | § | |
| v. | § | |
| | § | JUDGE PAMELA A. BARKER |
| CLEVELAND METROPOLITAN | § | |
| SCHOOL DISTRICT | § | |
|     *Defendant /* | § | |
|     *Third-Party Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| CUDDY LAW FIRM, P.L.L.C. and | § | |
| ALIA E. GREEN, | § | |
|     *Third-Party Defendants* | § | |

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

---

CUDDY LAW FIRM, PLLC
Angela Kovacs, Esq. OH #0103661
Andrew K. Cuddy, Esq. NY #2754729
*Attorneys for Plaintiff*
6100 Oak Tree Blvd., Suite 200
Independence, OH 44131
Office (216) 750-8773
Fax (440) 824-3332
AKovacs@cuddylawfirm.com
ACuddy@cuddylawfirm.com

**TABLE OF CONTENTS**

I. TABLE OF AUTHORITIES.................................................................................III

II. STATEMENT OF JURISDICTION................................................................. 1

III. STATEMENT OF ISSUES ............................................................................. 1

IV. STATEMENT OF THE CASE ........................................................................ 2

V. SUMMARY OF ARGUMENT ....................................................................... 3

VI. STANDARD OF REVIEW ............................................................................. 5

VII. ARGUMENT ................................................................................................... 6

   A. FAILURE TO PROPERLY EVALUATE THE STUDENT ................................. 6
     (1) *Failure to evaluate JCM in the area of speech services for the 2020–21 IEP.* ...... 8
     (2) *Failure to evaluate JCM in the area of speech services for the 2021–22 IEP* ....... 9
     (3) *Failure to evaluate JCM in the area of speech services for the 2022–23 IEP* ..... 10
   B. MISAPPLICATION OF THE STATUTE OF LIMITATIONS ........................... 12
     (4) *2017 Evaluation ETR (March 1, 2017 through February 29, 2020)*................... 14
     (5) *IEP dated March 19, 2019 to March 18, 2020* ...................................................... 15
     (6) *2020 Evaluation ETR (February 26, 2020 through February 25, 2023)* ............ 15
   C. DENIAL OF FAPE FOR THE 2019–2023 SCHOOL YEARS........................... 16
     (7) *Denial of FAPE, 2019–20 IEP (2019–20 and 2020–21 school years)*................ 18
     (8) *Denial of FAPE, 2020–21 IEP (2020–21 and 2021–22 school years)*................ 19
     (9) *Denial of FAPE, 2021–22 IEP (2021–22 and 2022–23 school years)*................ 21
     (10) *Denial of FAPE, 2022–23 IEP (2022–23 school year)* ....................................... 22
   D. NATIVE LANGUAGE................................................................................... 23
     (11) *Failure to communicate with Petitioner in her native language* ......................... 23
   E. NURSING SERVICES .................................................................................. 24
     (12) *Failure to evaluate JCM for nursing services* ...................................................... 26
   F. DENIAL OF FAPE IS NOT DIVISIBLE ....................................................... 27
   G. APPROPRIATE REMEDY/COMPENSATORY EDUCATION ....................... 31
     (13) *Failure to order compensatory education for the 2019–20 school year* ............. 32
     (14) *Failure to order compensatory education for the 2020–21 school year* ............. 33
     (15) *Failure to order compensatory education for the 2021–22 school year* ............. 33
     (16) *Failure to order compensatory education for the 2022–23 school year* ............. 34
     (17) *Failure to order comprehensive evaluations* ....................................................... 34
     (18) *Failure to order the services of a 1:1 paraprofessional.* ..................................... 35
     (19) *Failure to order appropriate relief for the denial of a 1:1 paraprofessional.*....... 36

VIII. REQUESTED RELIEF................................................................................. 37

IX. CONCLUSION ............................................................................................ 40

# I.        TABLE OF AUTHORITIES

**Cases**

*Alfes v. Educ. Credit Mgmt. Corp.*, 709 F.3d 631 (6th Cir. 2013) ................................................ 13

*Barnett v. Memphis City Schs*, 113 F. App'x 124 (6th Cir. 2004) ................................................ 37

*Bd of Educ. v. Ross*, 486 F.3d 267 (7th Cir. 2007) ........................................................................ 1

*Bd. of Educ. Fayette Cnty. v. L.M.*, 478 F.3d 307 (6th Cir. 2007) ................................ 4, 31, 32, 37

*Bd. of Educ. of the City School Dist. of the City of Cincinnati v. Wilhelmy*, 689 F. Supp. 2d 970
    (S.D.Ohio 2010) ........................................................................................................................ 11

*Bd. of Educ. v. Rowley*, 458 U.S. 176 (1982) ................................................................... 5, 17, 25

*Berger v. Medina City Sch. Dist.*, 348 F.3d 513 (6th Cir. 2003) ................................................... 5

*Burlington School Committee v. Department of Education,* 471 U.S. 359 (1985) ....................... 31

*Doe v. Defendant I*, 898 F.2d 1186 (6th Cir. 1990) ....................................................................... 5

*Doe v. Nashville Public Schs.*, 133 F.3d 384 (6th Cir. 1988) ........................................................ 5

*Endrew F. v. Douglas County School District RE-1*, 580 U.S. 386 (2017) ........................... passim

*Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712 (3d Cir. 2010) ................................................... 37

*G.E. v. Williamson Cty. Bd. of Educ.*, 731 F. Supp. 3d 954 (M.D. Tenn. 2024) ......................... 25

*G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601 (3d Cir. 2015) ....................................... 37

*Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 F. App'x 423 (6th Cir. 2016) ............. 21

*Irving ISD v. Tatro*, 468 U.S. 883 (1984) .................................................................................... 25

*Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001) ....................................... 5, 38

*Maple Heights City Sch. Bd. of Educ. v. A.C.*, No. 1:14CV1033, 2016 U.S. Dist. LEXIS 83100
    (N.D. Ohio June 27, 2016) ........................................................................................................ 11

*McLaughlin v. Holt Pub. Sch. Bd.*, 320 F.3d 663 (6th Cir. 2003) ................................................. 6

*Ottawa-Glandorf Local Schs.*, 67 IDELR 24 (SEA OH 2015).................................................... 18

*Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171 (3d Cir. 1988) ........................ 25

*Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516 (D.C. Cir. 2005) ................ 31, 32, 34, 37

*Somberg v. Utica Cmty. Schs.*, 908 F.3d 162, 169-70 (6th Cir. 2018) ............................ 28, 37, 38

*Stancourt v. Worthington City Sch. Dist. Bd. of Educ.*, 164 Ohio App. 3d 184, 2005 Ohio 5702,

    841 N.E.2d 812 (Ohio App.Ct. 10th Dist. Franklin Cty., Oct. 27, 2005) ................................ 11

*Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1111 (9th Cir. 2016) ................. 25

**Statutes**

20 U.S.C. § 1400.......................................................................................................................... 8

20 U.S.C. § 1401.......................................................................................................................... 22

20 U.S.C. § 1401(26)(A) ............................................................................................................. 30

20 U.S.C. § 1414(a)(2)(A) ..................................................................................................... 16, 30

20 U.S.C. § 1414(a)(2)(B)(ii) ................................................................................................... 9, 21

20 U.S.C. § 1414(b)(2) ................................................................................................................ 12

20 U.S.C. § 1414(b)(3)(B) ........................................................................................................... 30

20 U.S.C. § 1414(b)(4) ........................................................................................................... 15, 40

20 U.S.C. § 1414(d)(1)(B)(vi) ..................................................................................................... 32

20 U.S.C. § 1414(d)(3)(A)(iii) ............................................................................................... 20, 28

20 U.S.C. § 1414(d)(3)(B) ........................................................................................................... 12

20 U.S.C. § 1414(d)(4)(A)(ii) ................................................................................................. 41, 42

20 U.S.C. § 1415(b)(4) ................................................................................................................ 29

20 U.S.C. § 1415(b)(6)(A) ........................................................................................................... 19

20 U.S.C. § 1415(b)(7)(A)(ii) ...................................................................................................... 33

20 U.S.C. § 1415(b)(7)(B) ................................................................................................... 33

20 U.S.C. § 1415(f)(3)(C) ..................................................................................................... 18

20 U.S.C. § 1415(i)(2)(A) ....................................................................................................... 7

20 U.S.C. § 1415(i)(2)(C) ....................................................................................................... 7

20 U.S.C. § 1415(i)(2)(C)(iii) ................................................................................... 11, 36, 42

20 U.S.C. § 1415(f)(1)(A) ..................................................................................................... 19

**Rules**

O.A.C. § 3301-51-05(K)(4) ................................................................................................... 28

O.A.C. § 3301-51-05(K)(7)(a)(ii) .......................................................................................... 19

O.A.C. § 3301-51-05(K)(8)(e)(v) .......................................................................................... 18

O.A.C. § 3301-51-06 ............................................................................................................. 21

O.A.C. § 3301-51-06(D)(2)(b) .............................................................................................. 20

O.A.C. § 3301-51-06(E)(3)(f) ................................................................................... 12, 15, 40

O.A.C. § 3301-51-07 (I)(1)(f) ............................................................................................... 32

O.A.C. § 3301-51-07(H) ....................................................................................................... 22

**Regulations**

34 C.F.R. § 300 ..................................................................................................................... 22

34 C.F.R. § 300.1 .................................................................................................................... 9

34 C.F.R. § 300.303(a) .................................................................................................... 16, 30

34 C.F.R. § 300.303(b)(2) ....................................................................................................... 9

34 C.F.R. § 300.304(b)(2) ..................................................................................................... 30

34 C.F.R. § 300.304(c) .......................................................................................................... 12

34 C.F.R. § 300.304(c)(4) ............................................................................................... 15, 40

34 C.F.R. § 300.321(a)(6) ............................................................................................ 32

34 C.F.R. § 300.322(e) ................................................................................................ 28

34 C.F.R. § 300.324(a)(2)(v) ....................................................................................... 12

34 C.F.R. § 300.324(b)(1)(ii) ....................................................................................... 42

34 C.F.R. § 300.34(a) ................................................................................................. 30

34 C.F.R. § 300.507(a)(1) ........................................................................................... 19

34 C.F.R. § 300.508(d) ............................................................................................... 33

34 C.F.R. § 300.511(a) ............................................................................................... 19

34 C.F.R. § 300.511(e) ............................................................................................... 18

34 C.F.R. § 300.516(a) ................................................................................................. 7

34 C.F.R. § 300.516(c) ................................................................................................. 7

34 C.F.R. § 300.516(c)(3) ..................................................................................... 11, 36

34 C.F.R. § 300.324(b)(1)(ii) ....................................................................................... 41

34 C.F.R. § 300.508(b)(5) ........................................................................................... 33

34 C.F.R. § 300.34 (c)(13) .......................................................................................... 30

## II.  STATEMENT OF JURISDICTION

Under the Individuals with Disabilities Education Act ("IDEA"), any party aggrieved by the findings and decision of a state educational agency may bring a civil action in a United States District Court. *See* 20 U.S.C. § 1415(i)(2)(A); 34 C.F.R. § 300.516(a). The district court "shall receive the records of the administrative proceedings," may "hear additional evidence at the request of a party," and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); 34 C.F.R. § 300.516(c). Although "due weight" is afforded to the hearing officer, but the reviewing court must reach an "independent decision based on the preponderance of the evidence." *Deal v. Hamilton County Bd. of Ed.*, 392 F.3d 840, 849 (6th Cir. 2004).

## III.  STATEMENT OF ISSUES

1. Whether the SLRO erred in affirming the IHO's findings that CMSD did not deny JCM a FAPE by failing to evaluate and provide an augmentative communication device, for each of the 2020–21, 2021–22, and 2022–23 school years.

2. Whether the SLRO erred in affirming the IHO's findings that the 2017 and 2020 Evaluation Team Reports ("ETRs") were outside the statute of limitations, despite CMSD's continued reliance on those ETRs to develop each of the 2019–20 through 2022–23 school year IEPs.

3. Whether the SLRO erred in affirming the IHO's findings that CMSD did not deny FAPE in the areas of self-help, communication, assistive technology, behavior, and postsecondary transition for the 2019–20 through 2022–23 school years.

4. Whether the SLRO erred in affirming the IHO's finding that FAPE was not denied by CMSD's failure to communicate with the Parent in her native language and to provide documents translated into that language.

5.  Whether the SLRO erred in affirming the IHO's determination that CMSD did not fail to evaluate JCM for nursing services.

6.  Whether the SLRO erred in affirming the IHO's failure to order compensatory education or extension of JCM's eligibility beyond graduation to remedy the denial of FAPE for each of the 2019–20 through 2022–23 school years.

7.  Whether the SLRO erred in affirming the IHO's failure to order CMSD to conduct comprehensive evaluations in the areas of speech and language, assistive technology, augmentative communication (AAC), physical therapy, occupational therapy, self-help, and academics.

8.  Whether the SLRO erred in affirming the IHO's failure to order CMSD to reconvene the IEP team to amend JCM's IEP to include a 1:1 paraprofessional.

## IV.   STATEMENT OF THE CASE

M.F., individually and on behalf of her son, JCM ("Student"), a child with a disability, by and through her attorneys, Cuddy Law Firm, PLLC, brings this action under the IDEA, 20 U.S.C. § 1400 et seq., and its implementing regulations, 34 C.F.R. § 300.1 et seq., to seek reversal of portions of the State Level Review Officer's ("SLRO") decision, which affirmed a number of the erroneous findings and conclusions of the Impartial Hearing Officer ("IHO").

Both the IHO and SLRO correctly determined that the Cleveland Metropolitan School District ("CMSD" or "District") denied JCM a free appropriate public education ("FAPE") in connection with the Individualized Education Programs ("IEPs") corresponding to the 2020–21, 2021–22 and 2022–23 school years by failing to address his complex mobility and behavioral needs. (*See* A.R. 004910, 004912, 005313). They also determined that CMSD failed to adequately evaluate JCM prior to developing his IEPs for the 2021–2023 school years and failed to provide

essential accommodations, including "adult assistance for his transfers and mobility" and "a wheelchair accessible school building" for the 2021–22 IEP (A.R. 002617, 004912).

## V.  SUMMARY OF ARGUMENT

The SLRO's decision should be set aside in part, and this Court should find that CMSD denied JCM a FAPE for the 2019–20, 2020–21, 2021–22, and 2022–23 school years and order appropriate relief. The IHO recognized serious procedural and substantive violations but failed to grant meaningful remedies consistent with the IDEA and controlling precedent. The SLRO erred in affirming those failures. The IHO did not apply the *Endrew F.* standard that an IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances," a standard "markedly more demanding" than "merely more than de minimis." *Endrew F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. 386, 386, 137 S. Ct. 988, 991 (2017).

The IHO and SLRO erred in excluding the 2017 and 2020 ETRs as time-barred despite CMSD's ongoing reliance on those evaluations to develop JCM's IEPs through the 2022–23 school year. That ruling shielded from review the very assessments that drove CMSD's educational decisions from a proper review, contrary to 20 U.S.C. § 1414(a)(2)(B)(ii) and 34 C.F.R. § 300.303(b)(2).

The IHO and SLRO erred in concluding that CMSD did not fail to adequately evaluate and serve JCM in speech and language and augmentative communication, where the record shows that the District failed to conduct current, comprehensive evaluations or provide appropriate speech and language services in order to develop IEPs meeting his unique needs, and further erred in findings that CMSD did not deny FAPE in academics, transition, and communication and did not deny FAPE by failing to communicate with the Parent in her native language.

The IHO found, by a preponderance of the evidence, that CMSD denied JCM a FAPE across multiple school years, but the relief he ordered failed to restore JCM's lost educational opportunity. Rather than fashioning a compensatory education award that would " place [JCM] in the same position [he] would have occupied but for the school district's violations of IDEA," *Bd. of Educ. Fayette Cnty. v. L.M.*, 478 F.3d 307, 316–17 (6th Cir. 2007) he allowed the District to place him back in the same classroom that denied him a FAPE, with no one-to-one services or other necessary supports to address behaviors that interfered with his learning. The IHO provided no rational explanation for not awarding the requested relief or for not ordering the evaluations and supports JCM required. The SLRO compounded these errors by affirming the IHO's findings and remedies. IDEA and settled case law require equitable relief that fully compensates a student for lost educational opportunity. *See Fayette Cnty.*, 478 F.3d at 310, 316 ("An award of compensatory education is an equitable remedy that a court can grant as it finds appropriate" and should "aim to place [JCM] in the same position [he] would have occupied but for the school district's violations of IDEA.").

The administrative record shows that CMSD repeatedly failed to conduct appropriate evaluations in the areas of assistive technology, communication, and nursing services, and implemented IEPs that did not enable progress consistent with the standard set in *Endrew F.* Those failures spanned multiple school years, depriving JCM of meaningful educational benefit.

For these reasons, this Court should set aside the IHO's and SLRO's erroneous findings, hold that CMSD denied JCM a FAPE for the 2019–20 through 2022–23 school years, and award the compensatory education necessary to put JCM in the position he would have been in but for the CMSD's repeated failures.

4

## VI.    STANDARD OF REVIEW

Under the IDEA, the Court's inquiry is twofold. First, it examines the administrative proceedings to determine whether the school district complied with the IDEA's procedural requirements. Second, it considers whether the student's substantive right to a FAPE was violated. Determining a procedural violation involves an inquiry into "the process by which the IEP is produced." *Doe v. Defendant I*, 898 F.2d 1186, 1190 (6th Cir. 1990). A procedural violation does not automatically amount to a denial of FAPE; rather, such a violation constitutes a denial when it results in substantive harm to the child or his parents. *N.L. v. Knox Cty. Schs,* 315 F.3d 688, 689 (6th Cir. 2003). When a procedural violation has resulted in substantive harm, and thus constituted a denial a FAPE, the court shall "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii); 34 C.F.R. § 300.516(c)(3); *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001). The system of procedural protection only works if the state devises an individualized program and is willing to address the handicapped child's unique needs. *Deal*, 392 F.3d at 845. Relief for a procedural violation is appropriate when the violation caused substantive harm to the student or the parents, such as "seriously infringing on the parents' opportunity to participate in the IEP process, depriving an eligible student of an IEP, or causing the loss of educational opportunity." *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 520 (6th Cir. 2003).

District Courts reviewing IDEA administrative decisions apply a modified *de novo* standard, giving "due weight" to administrative findings but independently determining whether the record supports those conclusions. *See Deal*, 392 F.3d at 849; *Knable v. Bexley City Sch. Dist.*, 238 F.3d at 755; *Bd. of Educ. v. Rowley*, 458 U.S. 176, 205–06 (1982). The Court may not "simply adopt the state administrative findings without an independent re-examination of the evidence," *Doe v. Nashville Public Schs.*, 133 F.3d 384, 387 (6th Cir. 1988) but neither may it "substitute

5

their own notions of sound educational policy for those of the school authorities which they review." *Deal*, 392 F.3d at 849. Where educational expertise is not relevant because a federal court is just as well suited to evaluate the situation, less deference is due. *See McLaughlin v. Holt Pub. Sch. Bd.*, 320 F.3d 663, 666 (6th Cir. 2003).

## VII.   ARGUMENT

### A.  FAILURE TO PROPERLY EVALUATE THE STUDENT

The IDEA requires districts to evaluate using a variety of assessment tools, and "in all areas of suspected disability," by conducting evaluations sufficiently comprehensive to identify all of the child's special education and related service needs. 20 U.S.C. § 1414(b)(2); 34 C.F.R. § 300.304(c); O.A.C. 3301-51-06(E)(3)(f). This includes determining whether a student requires assistive technology[1], such as AAC, to access and benefit from instruction. *See* 20 U.S.C. § 1414(d)(3)(B); 34 C.F.R. § 300.324(a)(2)(v).

CMSD's failure to conduct comprehensive and updated evaluations violated both IDEA and Ohio law, depriving the IEP team of the information necessary to design appropriate programs for JCM The record shows that CMSD repeatedly relied on outdated, informal observations and incomplete data rather than conducting structured assessments. This failure persisted across multiple school years, and upon JCM returning to school after CMSD's year-long COVID closure, resulting in IEPs that recycled the same deficient goals and unsupported service levels, denying JCM meaningful progress consistent with *Endrew F.*

---

[1] Assistive technology is defined as "any item, piece of equipment, or product system, whether acquired commercially off the shelf, modified, or customized, that is used to increase, maintain, or improve functional capabilities of a child with a disability." 20 U.S.C. § 1401(1); 34 C.F.R. § 300.8(a)(1).

The IHO found that CMSD denied JCM a FAPE by failing to conduct behavioral assessments but did not fully account for the extent to which the failure to evaluate his communication needs undermined the adequacy of his educational program. Both the IHO and SLRO ignored undisputed evidence that CMSD conducted no systematic augmentative and alternative communication ("AAC") evaluation, disregarded expert testimony establishing the insufficiency of the District's assessments[2] and deprived the IEP team of critical data. The administrative record demonstrates that CMSD's repeated reliance on guesswork rather than evaluation led to the development of IEPs that were neither individualized nor reasonably calculated to enable progress. *See Endrew F.*, 580 U.S. 386.

Without adequate evaluations, JCM, a nonverbal student with complex communication and motor needs, was left without a method of functional communication, measurable goals, or appropriate assistive technology. The resulting IEPs fell far short of the IDEA's requirement that educational programs provide educational services that allow a student to make meaningful progress and thus receive a FAPE. The 2017 and 2020 ETRs, and the IEPs that relied upon them, failed to identify and address JCM's educational needs, resulting in programs that were neither individualized nor reasonably calculated to enable progress. This Court should find that CMSD's failure to conduct timely, comprehensive evaluations denied JCM a FAPE.

**(1)** **The SLRO erred in affirming the IHO's wrongful finding that the Respondent did not fail to properly evaluate JCM in the area of speech services, including an augmentative communication device, which was a denial of FAPE for the 2020–21 IEP (2019–20 and 2020–21 school years).**

---

[2] Dr. Howard Shane credibly testified that CMSD's evaluation record in the areas of communication and AAC contained "not a lot of information … [and was] not a very systematic assessment" (A.R. 002104–05) and that "a more extensive evaluation process was appropriate." (A.R. 004876).

The 2020–21 IEP was based almost entirely on the 2020 ETR, which included no structured testing or updated data regarding JCM's communication abilities. (A.R. 002573). The speech-language component of the 2017 ETR consisted only of informal observations and a record review, finding that JCM was nonverbal and functioned at approximately a 15-month communication level, and the ETR itself indicates further testing was needed. (A.R. 002456–57, 002448). Despite those findings, CMSD never conducted an AAC evaluation or any data-based assessment to determine how JCM might access communication. CMSD did not reevaluate JCM when school reopened after COVID-19 closures, despite documenting his lack of progress during that year. (A.R. 002774–76 and 002783–88).

The IEP team lacked an AAC-trained speech-language pathologist and had no data to inform measurable goals (A.R. 002589, 001145–46, 001161–62) (showing the AAC therapist who worked with JCM between 2017 and 2020 kept no progress notes or data). As a result, the 2020–21 IEP offered only five fifteen-minute speech sessions *per semester*—grossly inadequate, in fact meaningless, for a child with profound communication needs. (A.R. 002584). These service levels were not based on evaluative data but on attendance records and anecdotal impressions, violating the IDEA's requirement that services be tied to current, comprehensive evaluations. (A.R. 001721–22, 004779); 34 CFR§ 300.303(b)(2).

The Parent contended that the 2017 ETR, which served as the basis for the 2019–20 IEP, was fundamentally inappropriate. This deficiency was reflected in the 2019–20 IEP, which failed to provide JCM with even de minimis educational benefit. CMSD's reliance on the inadequate ETR resulted in an IEP that denied JCM a program reasonably calculated to enable him to make progress appropriate in light of his unique circumstances, as required by *Endrew F.*, resulting in a denial of FAPE for both the 2019–20 and 2020–21 school years.

**(2)     The SLRO erred in affirming the IHO's wrongful finding that the Respondent did not fail to properly evaluate JCM in the area of speech services, including an augmentative communication device, which was a denial of FAPE for the 2021–22 IEP (2020–21 and 2021–22 school years).**

Similarly, the 2021–22 IEP relied on the 2020 ETR without any evaluations sufficiently comprehensive to inform the IEP team of JCM's present levels or communication abilities. (A.R. 001677–78, 001680, 001749, 002605). The 2020 ETR's speech-language component failed to meet the IDEA's requirement that districts evaluate "in all areas of suspected disability." 20 U.S.C. § 1414(b)(4); 34 C.F.R. § 300.304(c)(4); O.A.C. § 3301-51-06(E)(3)(f).

CMSD's own speech-language pathologist recommended that an AAC-trained specialist "assist the team by providing assessments and equipment specific to [JCM's] academic, cognitive, physical, and communication abilities" (A.R. 002537), yet that recommendation was ignored. The District failed to conduct any AAC assessments, gathered no data on JCM's use of assistive technology, and included no AAC specialist in the evaluation process. As a result, the IEP was built on outdated and incomplete information, depriving the team of the means to address JCM's communication needs and rendering the program substantively inappropriate under the IDEA. *See* 20 U.S.C. § 1414(b)(4); 34 C.F.R. § 300.304(c)(4); O.A.C. § 3301-51-06(E)(3)(f).

When the IEP team met on February 22, 2021, CMSD had provided no in-person instruction or services since March 2020 (A.R. 000979–85, 004463–64) and consequently, no new or current data existed as to JCM's current abilities or progress during the prior year. (A.R. 002777–88). The progress reports developed by the District during this period did not include measurable IEP data. *Id.* The absence of measurable data should have triggered a reevaluation, particularly in speech-language and assistive technology, where JCM's needs were most significant. *See* 20 U.S.C. § 1414(a)(2)(A); 34 C.F.R. § 300.303(a). Instead of determining that new evaluations were warranted, CMSD eliminated AAC services entirely—without any data

supporting their removal. *Compare* A.R. 002585 *and* A.R. 002616 (showing the change in AAC and assistive technology recommendations).

By failing to conduct comprehensive and updated evaluations in the areas of speech-language and assistive technology, and removing services without justification, CMSD denied JCM a FAPE for both the 2020–21 and 2021–22 school years, thereby depriving him of educational benefit and meaningful progress.

**(3)** **The SLRO erred in affirming the IHO's wrongful finding that the Respondent did not fail to properly evaluate JCM in the area of speech services, including an augmentative communication device, which was a denial of FAPE for the 2022–23 IEP (2021–22 and 2022–23 school years).**

The record confirms that CMSD conducted no new evaluations before developing the 2022–23 IEP, in place during both the 2021–22 and 2022–23 school years and was again based on the 2020 ETR. (A.R. 002644). The 2022–23 IEP meeting included no speech-language pathologist or AAC specialist, and no data were presented addressing how JCM could access communication or instruction. Instead of addressing these deficits, CMSD inexplicably *reduced* related services, including speech and OT, from direct provision to consultative services. (A.R. 002664, 003358). The limited data CMSD relied upon showed that JCM remained nonverbal and functioning at roughly a six-month communication level, reflecting trivial or no progress. (A.R. 003492).

Dr. Howard Shane, one of the nation's leading experts in AAC, credibly testified that CMSD's evaluation record lacked sufficient data to inform IEP development and that a comprehensive AAC assessment was required (A.R. 002908–34, 002104–08, 004876). The IHO acknowledged Dr. Shane's expertise and credibility but improperly discounted his testimony because he performed a record review rather than in-person testing and because he allegedly failed to show that Boston Children's evaluation standards are "customary." (A.R. 004897–98). Dr. Shane has conducted thousands of assessments for students similar to JCM's over the past 30

years, routinely beginning with record review. (A.R. 002108–10). His testimony, unrebutted and grounded in the record, established that CMSD's evaluations provided little basis for developing a plan or "insight into [JCM's] actual abilities." (A.R. 002102–08).

While IHOs are afforded discretion in weighing evidence, that discretion must rest on reasoned findings. *See Maple Heights City Sch. Bd. of Educ. v. A.C.*, No. 1:14CV1033, 2016 U.S. Dist. LEXIS 83100, at 17-21 (N.D. Ohio June 27, 2016); *Stancourt v. Worthington City Sch. Dist. Bd. of Educ.*, 164 Ohio App. 3d 184, 2005 Ohio 5702, 841 N.E.2d 812, 823 (Ohio App.Ct. 10th Dist. Franklin Cty., Oct. 27, 2005)*; Bd. of Educ. of the City School Dist. of the City of Cincinnati v. Wilhelmy*, 689 F. Supp. 2d 970, 987 (S.D. Ohio 2010) (giving deference to the IHO where the IHO discredited witness testimony where the witness was unqualified to make a diagnosis, had failed to notice numerous errors in the documents reviewed, and gave testimony in conflict with another witness). Here, the IHO's rejection of Dr. Shane's testimony was not based on demeanor or credibility, but on a misunderstanding of his methodology. Because there was no conflicting testimony, and the record supports Dr. Shane's conclusions, neither the IHO nor the SLRO are entitled to deference.

The IHO's disregard of unrefuted expert testimony, and the SLRO's affirmance, constituted legal error. Both decisions ignored undisputed proof that CMSD failed to properly evaluate JCM and omitted essential assessments in speech-language and assistive technology. These omissions deprived the IEP team of the data necessary to formulate measurable goals, resulting in arbitrary reductions in services. (A.R. 002100–20). Dr. Shane testified that JCM demonstrated stronger functional communication skills than CMSD recognized, revelating that the IEP team lacked a "good understanding" of his abilities. (A.R. 001670–71).

This error was not harmless. It materially affected the outcome. Had the IHO properly credited the expert evidence, he would have found that CMSD failed to evaluate JCM in speech and augmentative communication and that CMSD was required to provide compensatory services to remedy the resulting educational loss. By continuing to rely on outdated and incomplete data and failing to conduct necessary evaluations in speech-language and assistive technology, CMSD denied JCM a FAPE for both the 2021–2022 and 2022–23 school years, thereby depriving him of educational benefit and meaningful progress. (A.R. 002125).

**B. MISAPPLICATION OF THE STATUTE OF LIMITATIONS**

The IHO's determination that claims arising from the 2017 ETR (effective through February 29, 2020), 2020 ETR (effective through February 25, 2023), and the 2019–20 IEP (effective March 19, 2019 through March 18, 2020) were outside the two-year statute of limitations was plain legal error. The IHO misapplied O.A.C. § 3301-51-05(K)(8)(e)(v), which governs only the **resolution period timeline**, not the limitations period for bringing due process claims. That regulation merely resets the 30-day resolution timeline when a complaint is amended; it does not restart or shorten the two-year filing period under 20 U.S.C. § 1415(f)(3)(C) and 34 C.F.R. § 300.511(e).

That error was not harmless. It became the basis for excluding from review the 2017 and 2020 ETRs and the 2019–20 IEP. (A.R. 004857–59). The Parent's original complaint, filed February 14, 2022, expressly challenged CMSD's failure to provide FAPE and reserved the right to supplement once missing records were produced. (A.R. 004936–37). The later amendment merely incorporated subsequently received evidence to the Parent's initial timely-raised claims.

Both the IHO and SLRO erroneously treated the March 11, 2022 amended complaint as the operative filing date, excluding from review all claims predating March 11, 2020. This

interpretation contradicts the plain language and intent of O.A.C. § 3301-51-05(K)(8)(e)(v) and settled case law holding that an amended complaint relates back when the claims arise from the same facts. *See Alfes v. Educ. Credit Mgmt. Corp.*, 709 F.3d 631, 639–40 (6th Cir. 2013).

The SLRO compounded the error by adopting the same miscalculation and concluding that the original filing date "would have allowed Petitioner to raise issues . . . that occurred prior to March 14, 2020." (A.R. 005312). The issues added to the amended complaint were limited to a claim for the failure to implement the 2019–20 IEP (which continued into June 2020), a claim regarding the invitation to the 2019–20 IEP meeting, which also included the same claim for the 2021–22 school year, and a claim of predetermination regarding extended school year services for the 2019–20 school year, which would have started in June 2020. (*Compare* A.R. 004940–42 *with* 004985–88). The remaining additions concerned the 2022–23 school year and did not fall within the SLRO's stated rationale. Even if the SLRO intended to apply O.A.C. § 3301-51-05(K)(7)(a)(ii) to exclude claims predating the amendment, that limitation could only have applied to the claim regarding the 2019 IEP meeting invitation; not the 2017 and 2020 ETRs or the 2019–20 IEP.

The erroneous calculation of the statute of limitations was the sole basis identified for excluding the 2017 ETR, 2019 IEP, and 2020 ETR as "outside jurisdiction." (A.R. 004857–59, 005311–12). Because the Parent's Notice of Appeal expressly challenged those jurisdictional determinations (A.R. 005174; Parent's Original Complaint, p. 17), the legal premise on which they rest is necessarily before the Court. The record confirms that the Parent's initial due process complaint was timely and encompassed all claims regarding the 2017 and 2020 ETRs and 2019–20 IEP. (A.R. 004934–44).

Excluding the 2017 and 2020 ETRs and the 2019–20 IEP from review on the ground that the due process complaint was later supplemented contradicts the procedural protections

guaranteed by the IDEA and deprived the Parent of the right to a substantive review of those documents in a due process hearing.[3] Because the IHO's and SLRO's exclusions rest entirely on this legal miscalculation, correcting that error is essential to a proper review of the preserved issues on appeal. Although the District may contend that the statute of limitations issue was not separately raised (A.R. 005276), it is not a new claim—it is the legal foundation for the preserved issue that the IHO erred in finding the 2017 and 2020 ETRs and the 2019–20 IEP outside his jurisdiction.

**(4)** **The SLRO erred in affirming the IHO's wrongful determination that the 2017 evaluation ETR was not within the IHO's jurisdiction because it was outside of the two–year statute of limitations despite CMSD continuing to use it on the 2019–20 and 2020–21 school year IEPs.**

The 2017 ETR remained in effect through February 29, 2020, and was used to develop both the 2019–20 IEP (March 19, 2019 to March 18, 2020) and the 2020–21 IEP (February 26, 2020 to February 25, 2021). (A.R. 002496, 002573). Because the initial due process complaint was filed February 14, 2022, CMSD's continued reliance on that ETR during the limitations period brings it squarely within the two-year window. Statutory law requires reevaluation every three years but does not extinguish the validity of an ETR once completed, requiring that each IEP must be "based on [the] results of [the] most recent evaluation." 20 U.S.C. § 1414(d)(3)(A)(iii); 34 CFR § 300.324(a)(iii); O.A.C. § 3301-51-06(D)(2)(b). The violation here is not the *creation* of the 2017 ETR, it is CMSD's *ongoing reliance* on it to inform IEPs developed after February 14, 2020. Shielding an operative ETR from review, while the District continues to use it to craft and

---

[3] IDEA guarantees that any party may file a due process complaint concerning issues related to a child's identification, evaluation, educational placement, or the provision of a free appropriate public education and have an opportunity for a due process hearing. *See* 20 U.S.C. § 1415(b)(6)(A); 34 C.F.R. § 300.507(a)(1); 20 U.S.C. § 1415(f)(1)(A); 34 C.F.R. § 300.511(a). .

implement IEPs, insulates CMSD's continued use of invalid data from scrutiny and denies the Parent due process.

By erroneously excluding the 2017 ETR as time-barred, the IHO and SLRO committed legal error and deprived the Parent of the procedural and substantive protections guaranteed under the IDEA. This Court should find that the 2017 ETR was properly within the IHO's jurisdiction and conduct a substantive review of its adequacy and continued use in the 2019–20 and 2020–21 IEPs. In doing so, the Court should further find that CMSD's continued reliance on the 2017 ETR directly contributed to its denial of FAPE for the 2019–20 and 2020–21 school years and warrants appropriate relief.

**(5)** **The SLRO erred in affirming the IHO's wrongful determination that the IEP dated March 19, 2019 to March 18, 2020, was not within the IHO's jurisdiction, because it was outside of the two-year statute of limitations, despite the Due Process Complaint being filed on February 14, 2022.**

The IHO and SLRO likewise erred in excluding the March 19, 2019 IEP, operative through February 26, 2020, on the same flawed limitations analysis. Applying the correct February 14, 2022 filing date, the 2019–20 IEP plainly falls within the two-year period. CMSD continued to implement that IEP into the actionable timeframe, and it remained in effect until replaced by the February 2020 IEP. The IHO's exclusion of this IEP, and the SLRO's affirmance, were therefore legal error and must be set aside.

**(6)** **The SLRO erred in affirming the IHO's wrongful determination that the 2020 evaluation ETR was not within the IHO's jurisdiction, because it was outside of the two-year statute of limitations, despite CMSD continuing to use it on the 2021–22 and 2022–23 school year IEPs.**

The 2020 ETR was the basis for the 2020–21, 2021–22, and 2022–23 IEPs, all implemented within the limitations period. (A.R. 002573, 002605, 002644). It is inseparable from those IEPs, which relied entirely on it for evaluative data. Under state and federal law, an ETR

must be conducted at least once every three years 20 U.S.C. § 1414(a)(2)(B)(ii); 34 C.F.R §
300.303(b)(2); O.A.C. § 3301-51-06. The 2020 ETR, created on February 26, 2020, therefore
remained valid through February 25, 2023, or until replaced with a new ETR, placing it squarely
within the two-year window under either filing date.

By excluding the 2020 ETR as time-barred, the IHO and SLRO again shielded from review
the evaluation that informed CMSD's educational decisions for three subsequent school years,
despite JCM's right to an annual IEP tailored to his current abilities and needs. This error deprived
the Parent of the opportunity to challenge the data underlying multiple IEPs and shielded CMSD's
continued use of inadequate evaluative information.

This Court should find that the 2020 ETR was properly within the IHO's jurisdiction,
conclude that CMSD's reliance on it denied JCM a FAPE for the 2020–21, 2021–22 and 2022–23
school years, and order appropriate compensatory relief.

### C. DENIAL OF FAPE FOR THE 2019–2023 SCHOOL YEARS

As discussed *supra* § B, the IHO's erroneous exclusion of the 2017 and 2020 ETRs, and
his related finding that the 2019–20 IEP was outside his jurisdiction, undermined his entire FAPE
analysis. By shielding those documents from substantive review, the IHO failed to account for the
fact that each subsequent IEP, from 2019–20 through 2022–23, was built on the same defective
foundation. Even if the ETRs or earlier IEP were not explicitly before the tribunal, the resulting
IEPs still required review, as each one was built upon the same outdated, incomplete, and
procedurally deficient evaluative data. (A.R. 002442, 002496, 002573, 002605, 002644).

The SLRO's affirmance compounded this error, allowing CMSD's pattern of neglect to go
unremedied. Substantively, the IDEA guarantees students a FAPE through specially designed
instruction and related services tailored to their individual needs. *See generally, Endrew F*, 580

16

U.S. 386; 20 U.S.C. § 1401 et seq; 34 C.F.R. § 300 et. seq. An IEP is "the centerpiece of [IDEA's] education delivery system" and must be "reasonably calculated to enable a child to make progress appropriate in light of [their] circumstances." *Endrew F.,* 580 U.S. 386, 386.

Here, CMSD's IEPs rested on incomplete and outdated evaluations and therefore lacked the services and data necessary to support meaningful progress. Across four consecutive school years, CMSD failed to provide JCM consistent access to communication, adaptive instruction, and behavioral supports. Each IEP from 2019–20 through 2022–23 relied on either the 2017 or 2020 ETR, neither of which included updated cognitive, adaptive, or behavioral assessments. CMSD ignored recommendations from its own evaluators, including the speech-language pathologist's recommendation that an AAC specialist conduct assessments and supply communication equipment. (A.R. 002537). No such assessments were ever completed, and no data exist in the record showing that appropriate AAC, physical therapy, or behavioral supports were implemented.

The resulting IEPs also consistently omitted evidence-based instructional methodologies and measurable goals targeting adaptive behavior, self-help, and behavioral regulation, despite repeated documentation of deficits in those areas. CMSD further failed to evaluate or provide services addressing JCM's seizure disorder and absences, even after repeatedly acknowledging the need for a seizure plan. CMSD also failed to ensure that assistive technology and AAC devices were functional, that specialized physical education was delivered, and that related-service personnel implemented the supports written into the IEPs. Even if the ETRs themselves are not evaluated for deficiencies, the resulting IEPs denied JCM a FAPE. The IHO correctly found that JCM's persistent mouthing behavior interfered with his learning and impeded the IEP team's ability to address his needs effectively. (A.R. 004866, 004877). This behavior impacted every aspect of his educational day. Because the IEP failed to address or remediate the behavior that so

clearly hindered his ability to learn, it could not have been properly implemented to provide a FAPE. As a result, JCM was denied critical services and supports and was unable to access instruction safely or meaningfully. CMSD's failure to address this known behavior deprived JCM of a FAPE.

Collectively, these recurring procedural and substantive failures constituted a systemic denial of FAPE across all four school years at issue. The Court should find that CMSD's reliance on invalid evaluations and its failure to provide individualized instruction and related services violated the IDEA and should order appropriate compensatory and corrective relief.

**(7)** **The SLRO erred in affirming the IHO's wrongful finding that the Respondent did not deny JCM a free and appropriate public education (FAPE) for the 2019–20 IEP (2019–20 school year) in the areas of academics, self-help, communication, assistive technology, behavior, and postsecondary transitioning.**

Once the IHO's jurisdictional error is corrected, the 2019–20 IEP (A.R. 002496) must be reviewed on the merits. The record shows that CMSD failed to provide required AAC services and failed to ensure JCM's assistive equipment was functional. (A.R. 004712 (no AAC records), 002014, 002690, 003897 (AAC broken), 003196 (AAC not used)). The 2017 ETR on which this IEP was based was medically incomplete as it failed to address JCM's epilepsy, feeding difficulties, or need for a seizure or health plan. CMSD also failed to train staff to recognize or respond to seizures. (A.R. 002442–68, 000245–46, 000934, 001251–53, 001526).

The 2019–20 IEP contained three annual goals requiring progress monitoring through "performance assessments" or "observation and anecdotal records." (A.R. 002503–08). Multiple objectives toward those goals were never introduced. (A.R. 002760, 002763, 000477, 001321). JCM lacked consistent access to working AAC devices, depriving him of communication altogether. *See Glandorf Local Schs.*, 67 IDELR 24 (SEA OH 2015) (district violated IDEA by failing to amend the IEP to replace nonfunctioning assistive equipment). CMSD also failed to

implement the physical therapy and adaptive physical education components of JCM's IEP, resulting in injury during gait-trainer activity when JCM was not properly supported or equipped with safety gear. (A.R. 002499, 002580, 000290–93). Although the IEP indicated that adaptive physical education was required (A.R. 002497), there is no documentation that CMSD ever provided it (A.R. 000281, 001412–13). Because CMSD failed to address JCM's persistent mouthing behavior, he was unable to engage in learning or access instruction. This ongoing neglect prevented meaningful educational progress during the entire school year.

The Court should find that CMSD's failure to maintain functional assistive technology, ensure staff training, and implement the IEP's physical and communication supports denied JCM a FAPE for the 2019–20 school year and order appropriate compensatory relief.

**(8)** **The SLRO erred in affirming the IHO's wrongful finding that the Respondent did not deny JCM a free and appropriate public education (FAPE) for the 2020–21 IEP (2019–20 and 2020–21 school years) in the areas of academics, self-help, communication, assistive technology, behavior, and postsecondary transitioning.**

The February 2020 ETR (A.R. 002523) again failed to meet IDEA standards. JCM was placed in a "single classroom" without any explanation for the change from his prior "medically fragile" designation. (*Compare* A.R. 002514 *with* 002453). For the reevaluation, CMSD merely reviewed prior records rather than conduct an updated comprehensive assessment. (A.R. 002525).

When CMSD's school buildings closed due to COVID-19, the District made no provision for implementing the IEP in a manner consistent with JCM's significant and complex disabilities. The Parent, without training, equipment, or professional support, was forced to implement the IEP at home for a child who is nonverbal, medically fragile, and dependent on assistive technology for communication and learning. (A.R. 000490, 000502). Unlike most students, JCM could not meaningfully access instruction without specialized staff and equipment. JCM's progress reports

confirm that he made little to no educational progress during this period. (A.R. 000489–90, 000503–04, 002774–0076, 002783–88).

The materials CMSD sent home during this time were completely inappropriate for his cognitive level. For example, one math assignment asked, "Christine weighs 28 pounds. Wanda weighs 5 pounds. How much heavier is Christine than Wanda?" (A.R. 000159, 000850, 000494–95, 000497–98). Such work had no relationship to JCM's functional academic abilities or goals and underscores CMSD's failure to individualize instruction or provide the specialized support necessary for him to access learning.

During the portion of the 2019–20 and 2020–21 school years when CMSD's buildings were open, JCM continued to experience a seizure disorder, carried a medication order at school, was frequently absent due to seizures, and had ongoing feeding difficulties. (A.R. 002530–32, 000880–81, 000920–21). At home, he experienced four to five seizures per month, often without warning, prompting the family to use cameras for monitoring (A.R. 000160–61, 000165–68, 000171, 000245). Staff members testified that they were unaware of any seizure activity at school; however, the record leaves unclear whether seizures weren't occurring or simply went unrecognized by untrained personnel. (A.R. 000865, 000882, 000934, 001526). The Parent testified that JCM's seizures are subtle—characterized by quiet episodes, eye-rolling, and lip discoloration—signs easily missed without proper trained attention and awareness. (A.R. 000165–66). Since the IEP team lacked the essential medical information needed to identify or respond to seizures during the school day, the IEP provided for no related supports. CMSD continued to offer only five speech-language sessions per semester, each lasting just fifteen minutes, despite JCM being nonverbal and plainly in need of extensive communication services. (A.R. 002584). CMSD

continued to disregard JCM's significant mouthing behavior, again depriving him of access to instruction and meaningful progress.

The Court should find that CMSD's failure to provide adequate medical, communication, and evaluative supports denied JCM a FAPE for both the 2019–20 and 2020–21 school years and order appropriate compensatory relief.

**(9)      The SLRO erred in affirming the IHO's wrongful finding that the Respondent did not deny JCM a free and appropriate public education (FAPE) for the 2021–22 IEP (2020–21 and 2021–22 school years) in the areas of academics, self-help, communication, assistive technology, behavior, and postsecondary transitioning.**

The 2021–22 IEP (A.R. 002605), again based on the same deficient 2020 ETR, perpetuated CMSD's ongoing violations. Rather than correcting prior deficiencies, CMSD further reduced specially designed instruction, without conducting new assessments or documenting progress. (A.R. 002585). Speech-language services were again limited to only fifteen minutes, five times per semester; grossly inadequate for a nonverbal student with almost no expressive communication. (A.R. 002584). The IEP again lacked measurable goals for adaptive skills, behavior, and self-help and failed to include evidence-based instructional methods. *See Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 F. App'x 423, 425 (6th Cir. 2016) (failure to address transition needs was a denial of FAPE); *Endrew F.*, 580 U.S. at 391 (requiring IEPs to have "measurable annual goals, including academic and functional goals"). Despite clear evidence that JCM's mouthing behavior severely interfered with his learning, CMSD again failed to develop a plan to address it.

CMSD eliminated the AAC speech-language pathologist across all environments, even though JCM relied on AAC for communication and to access his education. (A.R. 002616–17). This reduction occurred despite CMSD providing no in-person instruction since March 2020. CMSD relied on outdated information from the 2020–21 IEP, implemented remotely by JCM's

untrained parent, to determine present levels of performance. (A.R. 002606). CMSD failed to reevaluate JCM or address effects of interrupted instruction and lack of services.

On September 23, 2021, while left unattended, JCM pushed his wheelchair toward the stairwell and fell down the stairs, sustaining serious injuries. (A.R. 002813, 002904, 004609, 004903). This happened in spite of his IEP requiring adult assistance and a wheelchair accessible or one-story school (A.R. 002617). As a result, he missed over a month of school. (A.R. 000176–78).

This disregard for JCM's profound communication and adaptive needs resulted in an IEP that was neither data-driven nor appropriately ambitious, contrary to the requirements defined in *Endrew F.* This Court should find that CMSD's 2021–22 IEP denied JCM a FAPE for both the 2020–21 and 2021–22 school years and order compensatory relief.

**(10) The SLRO erred in affirming the IHO's wrongful finding that the Respondent did not deny JCM a free and appropriate public education (FAPE) for the 2022–23 IEP (2021–22 and 2022–23 school years) in the areas of academics, self-help, communication, assistive technology, behavior, and postsecondary transitioning.**

The 2022–23 IEP, again based on the deficient 2020 ETR, continued the pattern of deprivation. CMSD performed no new evaluations or updates, instead further reducing services. Speech-language therapy, previously delivered directly, was reduced to consultation only; still at a grossly inadequate frequency of five sessions per semester, fifteen minutes each. (A.R. 002657, 002584, 002616). Goals in the areas of functional life skills and independent living contained substantially similar objectives to those in the prior three IEPs, with only minimal changes. (A.R. 002505, 002580–83, 002654–56).

By failing to reevaluate JCM or address his fundamental communication and adaptive needs, CMSD denied him meaningful access to his education. CMSD again did not address JCM's

mouthing behavior and thus denied him the opportunity to make progress appropriate in light of his circumstances, a continuing denial of FAPE under *Endrew F.*

The Court should find that CMSD's continued reliance on the invalid 2020 ETR and failure to update or individualize JCM's program constituted an ongoing denial of FAPE for the 2022–23 school year and order comprehensive compensatory relief.

### D.  NATIVE LANGUAGE

**(11)  The SLRO erred in affirming the IHO's wrongful finding that FAPE was not denied by the Respondent's failure to communicate with Petitioner in her native language and failed to provide documents in her native language.**

The IDEA requires that parents receive all procedural safeguards, notices, and IEP-related information in their native language to ensure meaningful participation. *See* 20 U.S.C. § 1414(d)(3)(A)(iii), 1415(b)(4); 34 C.F.R. § 300.322(e); O.A.C. § 3301-51-05(K)(4).

CMSD was aware that the Parent's native language was Spanish. The District had previously provided a translator for the 2019–20 IEP meeting and translated documents in 2017. (A.R. 002446–51, 000073, 000925–26). Yet for subsequent IEP meetings, the District provided key documents only in English and failed to ensure the Parent understood the content or implications of those discussions.

The IHO's subjective conclusion that the Parent had "sufficient basic command of the English language" because she spoke English at the hearing (A.R. 004863) ignores evidence that her comprehension was inadequate for complex IEP discussions. The Parent testified that she often did not understand what was being discussed during meetings and could not meaningfully participate in decisions affecting her son's education. (*See e.g.,* A.R. 000670, 000705–06, 000719, 000774).

IDEA's procedural safeguards exist precisely to protect parents from being excluded from the IEP process by language barriers. *See* 20 U.S.C. § 1415(b)(4); 34 CFR § 300.503(c); OAC 3301-51-01(B)(38). Districts must provide required notices and IEP information "in the native language of the parents, unless it clearly is not feasible to do so." *Id.* Both the IHO and SLRO failed to apply this clear statutory requirement. Their rulings disregard the IDEA's guarantee that parents be afforded interpretation services when their native language is not English.

CMSD's failure to communicate and provide documents in Spanish denied the Parent meaningful participation in her child's education, a fundamental and substantive component of FAPE. The Court should find that CMSD's failure to communicate and provide documents in Spanish denied the Parent her procedural and substantive rights under the IDEA, and order appropriate relief.

### E. NURSING SERVICES

The IHO erred in concluding that the Parent's claim regarding CMSD's failure to evaluate JCM for nursing services was outside his jurisdiction. (A.R. 004877–78, 004910). Even if the 2017 and 2020 ETRs were not independently reviewable, the IHO was still required to determine whether the IEPs built upon those evaluations adequately addressed JCM's known medical and nursing needs**.**

Excluding the underlying ETRs did not relieve the IHO of his duty to assess CMSD's continuing obligation to evaluate JCM in all areas of suspected disability, including health and nursing services. Both the 2017 and 2020 ETRs failed to include any meaningful nursing evaluation, resulting in IEPs that denied JCM a FAPE for the 2019–20, 2020–21, 2021–22 and 2022–23 school years.

The IHO also erred in finding that CMSD had no duty to reevaluate absent an explicit parental or teacher request. (A.R. 004878). Under the IDEA, a district's obligation to evaluate arises whenever it has notice of a child's ongoing or suspected disability. *See* 20 U.S.C. § 1414(b)(3)(B); 34 C.F.R. § 300.304(b)(2); *G.E. v. Williamson Cty. Bd. of Educ.*, 731 F. Supp. 3d 954, 966 (M.D. Tenn. 2024). This duty extends to reevaluations for children with existing IEPs. *See* 20 U.S.C. § 1414(a)(2)(A); 34 C.F.R. § 300.303(a); *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1111 (9th Cir. 2016). The District's reliance on informal observation or subjective judgment does not satisfy this duty.

The IDEA guarantees "access to specialized instruction and related services" that are "individually designed to provide educational benefit." *Rowley*, 458 U.S. at 200–01. That benefit must be meaningful, not merely trivial. *Deal*, 392 F.3d at 862 (quoting *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171 (3d Cir. 1988)). Related services under the IDEA include "school health services" that are "provided by a qualified school nurse or other qualified person." 20 U.S.C. § 1401(26)(A); 34 C.F.R. §§ 300.34(a), (c)(13); *Irving ISD v. Tatro*, 468 U.S. 883 (1984) (finding that clean intermittent catheterization (CIC) performed during the school day qualified as a related service and that the school district failure to provide it constituted a denial of FAPE).

Meaningful progress cannot occur when a district ignores a child's medical fragility. The record establishes that JCM has a seizure disorder, carried a medication order, and was frequently absent due to seizures and feeding difficulties. (A.R. 000790, 000881–82, 002455, 000160–61, 000505). Despite clear notice of these needs (A.R. 002455, 002462, 002496, 002605, 002606, 002645, 002872), CMSD never evaluated for nursing or health services. Staff testified that they were unaware of seizure activity and received no training to identify or respond to seizures. (A.R. 002442–68, 000245–46, 000934, 001251–53, 001526). At home, JCM continued to experience

multiple seizures monthly, often without warning (A.R. 000165–68), yet CMSD failed to incorporate this medical information or any seizure management plan into the IEP. This omission prevented the IEP team from formulating a program reasonably calculated to enable progress in light of JCM's unique circumstances, as required under *Endrew* and *Deal*.

The SLRO's and IHO's conclusion that CMSD had no duty to evaluate JCM for nursing services was inconsistent with IDEA's clear requirement to assess all suspected areas of disability. Given JCM's documented seizure disorders, feeding difficulties, and medical fragility, CMSD's failure to conduct appropriate health evaluation or incorporate nursing supports into his IEP violated both its evaluative obligations and JCM's right to a FAPE. The Court should find that CMSD's omission constituted a denial of FAPE for the 2019–20, 2020–21, 2021–22, and 2022–23 school years and order appropriate compensatory relief.

**(12)    The SLRO erred in affirming the IHO's wrongful finding that the Respondent did not fail to evaluate JCM for nursing services.**

**(i)  2017 ETR (2019–20 IEP)**

Even if the 2017 was not itself reviewable, the IHO was required to determine whether the IEPs built upon it adequately addressed JCM's medical needs**.** The 2017 ETR and 2019–20 IEP, despite noting JCM's history of epilepsy and feeding issues, failed to include any seizure plan or health component. (A.R. 002460, 002464, 002452, 002455, 002462, 002496). CMSD also excluded nursing staff from both the ETR and IEP processes, in violation of state and federal requirements. (A.R. 002442–94, 002468); 20 U.S.C. § 1414(d)(1)(B)(vi); 34 C.F.R. § 300.321(a)(6). Without accurate and comprehensive information about JCM's seizure disorder, the 2017 ETR deprived the IEP team of the data necessary to craft an appropriate program to address his medical and educational needs and to provide training and support for the IEP team to identify and address JCM's seizures during the 2019–20 school year.

**(ii) 2020 ETR (2020–21 through 2022–23 IEPs)**

CMSD completed another triennial ETR on February 26, 2020, again finding JCM eligible under multiple disabilities but removing him from a medically fragile classroom without explanation. (A.R. 002534). The evaluation consisted solely of a records review, despite continued evidence of significant medical issues—ongoing seizure disorder, frequent absences, and feeding challenges. (A.R. 000882, 002537, 002545, 002575, 002606–07, 002645, 002650, 002651, 002655, 002605, 002606, 002645, 002872, 000881–82, 000920–21). Staff again reported no seizures were observed, though the record reflects they were untrained to recognize them. (A.R. 000865, 000882, 000934, 001526).

The IEP team did not consider additional services or training to address seizure-related absences, and the Parent confirmed that JCM continued to experience multiple seizures monthly. (A.R. 000167–68). Despite clear notice of JCM's seizure disorder and risk of neurological injury, CMSD failed to gather medical data, engage nursing staff, or implement seizure management supports. The absence of such planning deprived the IEP team of essential information to design a safe, effective program, constituting a denial of FAPE under *Endrew F.*, *Deal*, and *Tatro*. Because each IEP from 2020–21 through 2022–23 relied on this same deficient ETR, CMSD's failure to conduct or incorporate a nursing assessment persisted year after year.

The Court should find that CMSD's ongoing failure to evaluate and address JCM's medical and nursing needs violated the IDEA and denied JCM a FAPE for the 2019–20, 2020–21, 2021–22, and 2022–23 school years, and order appropriate compensatory relief.

**F.  DENIAL OF FAPE IS NOT DIVISIBLE**

The IHO's findings reflect a fundamental misunderstanding of what constitutes a denial of FAPE. Instead of evaluating whether CMSD's cumulative conduct deprived JCM of meaningful

educational benefit, the IHO fragmented the Parent's thirteen claims (Amended Complaint, Page ID # 13-16) into fifty-seven discrete issues, ruling on each in isolation. Some were excluded as time-barred, others were found to be not proven, and none were viewed in context. This piecemeal approach distorted the analysis and obscured the broader reality: the record overwhelmingly demonstrates a continuing denial of FAPE across all school years at issue. IDEA requires sufficiency of a due process complaint, which includes "facts relating to the problem." 20 U.S.C. §§ 1415(b)(7)(A)(ii), (b)(7)(B); 34 C.F.R. §§ 300.508(b)(5), (d). Each of the Parent's claims listed the facts as required.

A denial of FAPE is not divisible. Once a district's procedural or substantive violations collectively deprive a child of meaningful educational benefit, which they did here[4], the denial is complete. The IDEA does not require parents to prove that each individual failure independently caused educational harm. In *Somberg v. Utica Cmty. Schs.*, 908 F.3d 162, 169–70 (6th Cir. 2018), for example, the district court upheld a finding that the student was denied a FAPE, and entitled to compensatory education, even though some of the parent's specific claims were not substantiated. Courts have consistently held that the inquiry is whether, **taken as a whole**, the district's conduct deprived the child of educational benefit or impeded parental participation. *See Deal*, 392 F.3d at 845. The weight of the evidence shows that CMSD's IEPs were built on outdated or incomplete evaluations, ignored expert recommendations, and failed to deliver the services necessary for progress. The IHO's refusal to consider the 2017 and 2020 ETRs or 2019–20 IEP on jurisdictional

---

[4] "The Respondent failed to adequately evaluate the Student by performing a functional behavior assessment for his February 22, 2021 IEP and therefore denied the Student FAPE." (A.R. 004910). "The Student's February 15, 2022 IEP was not adequate . . . and therefore denied the Student FAPE." (A.R. 004910). "The Respondent's failed to adequately evaluate the Student by performing a functional behavior assessment for his February 15, 2022 IEP and therefore denied the Student FAPE." (A.R. 004910).

grounds, compounded this error. Those documents reveal a continuous chain of procedural and substantive violations from 2019 through 2023, each year perpetuating the same failures.

The IHO correctly recognized that CMSD denied JCM a FAPE by failing to address his persistent mouthing behaviors, conduct a functional behavior assessment, and implement the required maneuvering assistance accommodation. (A.R. 004875[5], 004876[6], 004904[7]). These findings, covering the 2020–21, 2021–22, and 2022–2023 school years, alone establish a sustained denial of FAPE. A FAPE is offered when the district complies with the procedural requirements set forth in the IDEA, *and* (b) develops an IEP that is reasonably calculated to enable the student to receive educational benefits *See Endrew F.,* 580 U.S. 386, 386 (emphasis added). Here, the IEPs were not reasonably calculated as they were not based on a comprehensive assessment of the Student's needs, and his interfering behaviors were not addressed. The proper inquiry is whether, taken together, the District's actions deprived JCM of meaningful educational opportunity. They did.

JCM's near-constant mouthing behaviors rendered him unable to engage with instruction, and CMSD failed to provide the supports necessary to address them. Testimony at hearing established the frequency and severity of these behaviors, and the obvious need for intensive support, including a dedicated 1:1 aide.[8] Yet CMSD repeatedly failed to act.

---

[5] "[T]he Student's February 22, 2021 IEP was inadequate because it failed to consider the unique circumstance of JCM's mouthing behavior when determining JCM's functional needs and therefore *denied the Student a FAPE*." (A.R. 004875) (emphasis added).

[6] "[T]he Respondent's failures to adequately evaluate the Student by performing a functional behavior assessment for his February 22, 2021 and again for his February 15, 2022 IEP *each denied a FAPE for Student*." (A.R. 004877) (emphasis added).

[7] "[T]he Respondent's violation of that accommodation requirement … *denied the Student FAPE*." (A.R. 004904) (emphasis added).

[8] "He has made limited progress . . . due to putting the device in his mouth when hand-over-hand assistance is removed." (A.R. 004683). "[He] does not use [an] item appropriately, rather he puts it in his mouth." *Id.* "[I]t was difficult to work with him one-on-one because everything went into

As a result, JCM was effectively excluded from meaningful participation in learning for nearly every minute of every school day. And, as IHO Alexander noted, year after year, CMSD ignored this ongoing barrier. (A.R. 004910). His teacher from 2018–20, Emily Ladd, testified that she did not recall any discussions by the ETR team regarding JCM's mouthing behavior, and did not recall making any recommendations to address it. (A.R. 004732–33). Henry Barr, his teacher during 2021–22, confirmed that JCM would put materials in his mouth, ending his engagement, yet he too never recommended an evaluation or plan to address the behavior. (A.R. 000226).

For CMSD to now argue that JCM was not denied a FAPE because the IHO did not find an individual violation for each of the fifty-seven individual supporting sub-claims he identified from the Parent's due process complaint is indefensible. JCM's mouthing behaviors permeated every school day from 2019–20 through 2022–23. CMSD's repeated failure to address those behaviors alone denied him a FAPE.

While the IHO correctly found that CMSD denied a FAPE for the 2020–21, 2021–22, and 2022–2023 school years, the IHO erred in excluding the 2017 and 2020 ETRs and 2019–20 IEP from review. As discussed *supra* § B, these documents fall within the limitations window and are critical to understanding the ongoing deprivation. Once properly considered, the record establishes that CMSD denied JCM a FAPE for **all four school years**—2019–20 through 2022–23.

---

his mouth, and in trying to work with him, you needed an extra pair of hands." (A.R. 004684). "He has been demonstrating more grabbing, mouthing & spitting behaviors this period." "He requires constant hand over hand assistance to participate in all activities in order to keep the items out of his mouth." (A.R. 004689). "[T]he Student's hands routinely appeared bruised and were "constantly like redden [*sic*] and hardened and swollen" from placing his hands in his mouth." (A.R. 004692). "[The Student] continuously puts items in his mouth such as his own hand, toys, and other items he can grab." (A.R. 004699). "The Student's mouthing behavior impeded his ability to learn or participate in the classroom." (A.R. 004719). "He will put items in his mouth 100% of the time." (A.R. 004721). "[E]verything that [he] came in contact with, he would put in his mouth." (A.R. 004732). His mouthing "interferes with all of his activities. It really does prohibit him from being able to participate." (A.R. 004770).

Even absent the ETRs, the IEPs themselves show egregious systemic noncompliance: repeated failures to evaluated, ignored communication and behavioral needs, and continued reliance on outdated data. Taken together, these violations constitute a clear and ongoing denial of FAPE, warranting remedial relief.

## G.  APPROPRIATE REMEDY/COMPENSATORY EDUCATION

Under the IDEA, when a school district denies a student a FAPE, the Court shall grant "such relief as the [C]ourt determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii); 34 C.F.R. § 300.516(c)(3); *Burlington School Committee v. Department of Education,* 471 U.S. 359 (1985). Such relief must be equitable and designed to restore JCM to "the same position [he] would have occupied but for the school district's violations of IDEA." *Fayette Cnty.* 478 F.3d at 316–17 (citing *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005)). Some students "may need extended programs, perhaps even exceeding hour-for-hour replacement of time spent without FAPE." *Reid*, 401 F.3d at 524. Individuals over the age of twenty-one are still eligible for compensatory education for denials of FAPE that occurred prior to the student turning twenty-one. *See Somberg*, No. 13-11810, 2017 U.S. Dist. LEXIS 7845, at *7.

The IHO correctly found that CMSD denied JCM a FAPE in multiple school years but failed to provide a remedy commensurate with the scope or duration of the deprivation. The IHO offered no explanation for limiting compensatory relief to twenty days of instruction and a belated functional behavior assessment ("FBA"), despite acknowledging three consecutive school years of unremedied violations. The SLRO affirmed that inadequate relief, compounding the legal error. (A.R. 005314–15). Worse yet, the SLRO based his decision on his misstatement of the record, stating that the IHO ruled that FAPE was not denied for the 2020–21 and 2021–22 school years. *Id.* In fact, the IHO did find denial of FAPE for the 2020–21 and 2021–22 school years, for failing

to address the Student's mouthing behavior (2021 IEP), failing to adequately evaluate the Student (2021 and 2022 IEPs), and violating JCM's IEP for wheelchair accommodations (2021 IEP) . (A.R. 004875, 004877, 004904).

The record shows pervasive and continuing failures from 2019–2023: CMSD relied on outdated and incomplete evaluations, failed to address JCM's maladaptive mouthing behaviors, and denied him the individualized behavioral, communicative, and adaptive supports necessary to access education. Relief must address this cumulative deprivation and ensure that JCM's lost opportunity for progress is restored.

Because JCM is no longer enrolled in school, any compensatory relief should be delivered through a bank of instructional and therapeutic hours administered at the Parent's discretion with qualified providers. A flexible bank allows individualized implementation and remains consistent with the remedial purpose of the IDEA. *See e.g.*, *Reid*, 401 F.3d at 525 ("whereas ordinary IEPs need only provide "some benefit," compensatory awards must do more—they must compensate.").

**(13)    The SLRO erred in affirming the IHO's failure to order that the Respondent provide compensatory education by extending eligibility one year beyond graduation for the denial of FAPE for the 2019–20 school year or sufficient alternative compensatory education.**

The IHO erroneously concluded that the 2019–20 IEP was outside his jurisdiction under a two-year statute of limitations. (A.R. 004858–59). As established *supra* § B, this was incorrect. The record reflects continued reliance on the 2017 ETR and the same deficient programming that persisted through later years. Given JCM's severe communication and adaptive needs, equitable relief for that year—such as one additional year of eligibility or equivalent compensatory services—is necessary to restore the educational opportunity lost. *See Fayette Cnty.*, 478 F.3d 307.

**(14)    The SLRO erred in affirming the IHO's failure to order that the Respondent provide compensatory education by extending JCM's eligibility one year beyond graduation**

32

for the denial of FAPE for the 2020–21 school year or sufficient alternative compensatory education.

The IHO found most claims concerning the 2020–21 school year outside of his jurisdiction, despite the IEP itself falling within the statutory period. (A.R. 004858). Substantively, the 2020–21 IEP denied JCM a FAPE in the same respects as the 2021–22 and 2022–23 IEPs: CMSD failed to recognize JCM's mouthing behavior as impeding learning, failed to conduct an FBA, and ignored his unique communication, sensory, and adaptive needs. (A.R. 004877[9], 004910). The IHO's later order for an FBA (A.R. 004913) implicitly acknowledged that the same violation existed during the 2020–21 school year. Equitable relief must therefore include the 2020–21 school year as well.

**(15)   The SLRO erred in affirming the IHO's failure to order that the Respondent provide compensatory education by extending JCM's eligibility one year beyond graduation for the denial of FAPE for the 2021–22 school year or sufficient alternative compensatory education.**

For the 2021–22 school year, the IHO explicitly found that CMSD failed to identify or evaluate JCM's mouthing behavior, determine its causes, or conduct an FBA. (A.R. 004876–77[10], 004910). These findings constitute an unequivocal denial of FAPE. Yet rather than ordering compensatory services, the IHO limited relief to an FBA by a Board-Certified Behavior Analyst "to determine what, if any, additional services" were necessary. (A.R. 004913). Such limited

---

[9] "The Petitioner proved by a preponderance of the evidence that JCM's mouthing behavior is a manifestation of his disability that has been continuous since 2017, as recorded in his subsequent IEPs and his 2020 ETR, and *has impeded his learning by interfering with the services provided by the members of his various IEP teams*." (A.R. 004877) (emphasis added).

[10] "This Impartial Hearing Officer concludes that JCM's February 15, 2022 IEP was inadequate because it failed to consider the unique circumstance of JCM's mouthing behavior when determining JCM's functional needs and therefore *denied the Student a FAPE*." (A.R. 004866) (emphasis added).

prospective relief cannot compensate for years of lost educational access. Compensatory education must restore what was lost, not merely prevent recurrence. *See Reid*, 401 F.3d at 525.

**(16)    The SLRO erred in affirming the IHO's failure to order that the Respondent provide compensatory education by extending JCM's eligibility one year beyond graduation for the denial of FAPE for the 2022–23 school year or sufficient alternative compensatory education.**

For the 2022–23 school year, the IHO again found that CMSD failed to evaluate or address JCM's mouthing behavior and denied FAPE. (A.R. 004877, 004910). Nonetheless, he awarded only twenty days of compensatory education and an FBA. (A.R. 004913). This remedy fails to compensate for the four years of deprivation found in the record. Where a denial of FAPE is found, compensatory education should provide the educational benefits "that likely would have accrued" had the District provided appropriate services. *Reid*, 401 F.3d 516 at 524.

The IHO's and SLRO's decisions ensured that the Student's deprivation would persist into future programming and sent him back to the classroom that was found to have ongoing continuous violations, precisely the outcome the IDEA seeks to prevent.

**Evaluations**

**(17)    The SLRO erred in affirming the IHO's failure to order the Respondent to conduct comprehensive evaluations of JCM in the areas of speech and language, assistive technology, augmentative communication (AAC), physical therapy, occupational therapy, self-help, and academics.**

As established previously in Section A, CMSD failed to properly evaluate JCM for four consecutive school years, 2019–20 through 2022–23, in the critical areas of speech and language, assistive technology, AAC, physical therapy, occupational therapy, self-help, and academics. Each IEP during that period was built on incomplete and outdated information. The IDEA requires districts to evaluate "in all areas of suspected disability." 20 U.S.C. § 1414(b)(4); 34 C.F.R. §

300.304(c)(4); O.A.C. § 3301-51-06(E)(3)(f). The IHO's and SLRO's refusal to order updated evaluations ensured continued reliance on deficient data and perpetuated the violation.

**1:1 Paraprofessional**

**(18) The SLRO erred in affirming the IHO's failure to order that the Respondent hold a meeting to amend JCM's most recent IEP to include the services of a 1:1 paraprofessional.**

The record clearly establishes that JCM required continuous 1:1 support to participate safely and meaningfully in instruction. CMSD's own staff and witnesses described his functioning between 6-15 months of age. (*See e.g.,* A.R. 001501–02, 001550–52, 001560–61 (testimony), 002531–32, 002536, 002538–39, 002540, 002544, 002547, 002559, 002560, 002575–76, 002582, 002607, 002615, 002653 (IEPs and evaluations), 004664, 004758 (IHO decision)).

Christine Stives, speech-language pathologist, testified that she struggled even to work with him one-on-one due to his mouthing behaviors, and said working with him required "an extra pair of hands." (A.R. 000942, 004684). Jennifer Heinrich, occupational therapist, testified that he "had to be monitored 100 percent of the time," and "cannot be left unsupervised," (AR. 001530–1531, 001534). The Parent testified that she believed he needed a 1:1 aide. (A.R. 000516, 000713). Jennifer Blankenship testified that JCM's teacher confirmed his need for continuous 1:1 support to access instruction safely and meaningfully. (A.R. 002906–07, 002148–49, 002154–55). Ms. Blankenship also testified that JCM's behavior, such as grabbing people and materials, "[impede] upon his ability to learn," and she specifically recommended one-on-one support. (A.R. 002153–62, 004823). Despite this unrefuted testimony, the IHO disregarded the opinion of a board-certified behavior analyst who personally observed JCM in the classroom because she "was not qualified as an expert witness." (A.R. 004823).

Despite this unrefuted evidence, the IHO dismissed witness testimony and declined to order the support. CMSD's belated decision to add a 1:1 paraprofessional in November 2022 (after the conclusion of the hearing) relied on the same 2020 ETR and other evidence that was before the IHO, confirming that the need for 1:1 assistance was not new, but long recognized and repeatedly ignored. (A.R. 002935–37) (Prior Written Notice notes decision to add 1:1 was based on observation, parent input, current IEP and ETR). The omission of this service denied JCM access to instruction and a safe educational environment. The IDEA requires revision of the IEP whenever data show the existing plan is inadequate. 20 U.S.C. § 1414(d)(4)(A)(ii); 34 C.F.R. § 300.324(b)(1)(ii). The IHO's refusal to order the service, and the SLRO's affirmance were clear errors that sent JCM back to his classroom without the necessary support of a 1:1 aide.

**(19)  The SLRO erred in affirming the IHO's failure to order that the Respondent provide one year beyond graduation for the denial of FAPE for the failure to amend JCM's most recent IEP to include the services of a 1:1 paraprofessional.**

JCM's engagement, attention, and participation depended entirely on continuous one-to-one support. His teacher reported that he "will only work when he has 1:1 support." (A.R. 002906). Witness Jennifer Blankenship, after direct observation in May 2022, concluded that a 1:1 paraprofessional was essential to implement behavioral interventions and facilitate learning. (A.R. 002906–07). CMSD did not dispute this need and, in fact, failed to present any evidence suggesting that less intensive support would allow JCM to make progress. This failure constitutes both a procedural violation, for failing to review and revise the IEP when information indicated the existing plan was inadequate, and a substantive violation, for maintaining an IEP not reasonably calculated to enable progress. *See Endrew F.* 580 U.S. 386; 20 U.S.C. § 1414(d)(4)(A)(ii); 34 C.F.R. § 300.324(b)(1)(ii).

Compensatory education is the appropriate equitable remedy for such a denial. See *Fayette Cnty.*, 478 F.3d at 316–17. Because JCM lost years of meaningful instructional access due to CMSD's refusal to provide necessary support. The Court should order compensatory services to restore what was lost.

## VIII.  REQUESTED RELIEF

The IDEA authorizes courts to grant "appropriate" equitable relief to compensate for educational deprivation. 20 U.S.C. § 1415(i)(2)(C)(iii); 30 C.F.R. § 300.516(c)(3). Courts are instructed to apply a "flexible approach" to ensure the remedy meaningfully addresses the deprivation. *Fayette Cnty.*, 478 F3d at 316–17 (citing *Reid*, 401 F.3d at 518). Where a student is no longer eligible for IDEA services, compensatory education may be awarded beyond graduation. *See Barnett v. Memphis City Schs*, 113 F. App'x 124, 125 (6th Cir. 2004) (holding that compensatory education was an appropriate remedy after graduation for violations that occurred when the student was under age 21); *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 718 (3d Cir. 2010) (a court may grant compensatory education where a student no longer has a right to FAPE). Courts can award "meaningful relief, even when [the student] no longer attends school within the district." *Somberg,* 908 F.3d at 167 (affirming award of 1,200 hours of tutoring and one year of transition planning as compensatory education for denial of FAPE for one school year). Compensatory education awards are not constrained by the same limitations applicable to the underlying FAPE claims, provided those claims are filed timely. *See G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 604 (3d Cir. 2015) (holding that the IDEA does not limit remedies available for timely-filed claims, and that, once a claim is timely filed, the entire period of the violation should be remedied). Where, as here, there are substantive violations of FAPE, parents

do not bear the burden of showing an "educational loss" for an award of compensatory education. *Id.* (citing *Knable,* 238 F.3d at 769).

The IHO found the Parent's claims timely from March 2020 forward, covering part of the 2020–21 school year, and the entirety of the 2021–22 and 2022–23 school years, and found denial of FAPE for each. Accordingly, JCM is entitled to compensatory education for *at least* that period. If this Court further finds that the 2019–20 and earlier 2020–21 claims were timely filed, as established above, then compensatory education is warranted for those periods as well. Neither the IHO nor the SLRO offered a reasoned explanation for declining to award appropriate compensatory education despite clear denials of FAPE.

**Cumulative Relief Is Warranted to Remedy the Multi-Year Denial of FAPE**

Both the IHO and SLRO erred by not considering the cumulative and compounding impact of CMSD's ongoing failures. The record demonstrates denials of FAPE across all four of the 2019–20, 2020–21, 2021–22, and 2022–23 school years. These were not isolated errors but part of a systematic pattern of neglect that deprived JCM of meaningful access to education.

> "A student offered an educational program providing "merely more than de minimis" progress from year to year can hardly be said to have been offered an education at all. For children with disabilities, receiving instruction that aims so low would be tantamount to sitting idly awaiting the time when they were old enough to drop out." *Endrew F.*, 580 U.S. 386, 386.

Each year, the IEPs CMSD developed for JCM relied on the same deficient evaluative data, omitted critical supports, and failed to address known maladaptive behaviors. CMSD's SLRO brief underscores the District's approach to this Student, characterizing him as lacking "capacity for learning in relationship to his significant cognitive disabilities and impairments." (A.R. 005274). That position is consistent with the District's programming decisions; effectively abandoning JCM rather than designing appropriate programs. Witnesses testified that JCM had plateaued, ceased

making progress, and was deprived of critical services such as 1:1 support and an appropriate behavior plan. (A.R. 001223–27, 001236–37, 001261, 001500–01, 001518, 001560, 001582–83).

Emily Ladd, JCM's teacher between 2018–20, testified that despite only having data on two of the five trials for JCM's functional academic goal, she concluded he had made adequate progress. (A.R. 001289–90). She testified that she was unsure whether she would have made the same conclusion had data shown no progress on the other three. (A.R. 001291). Progress reports reflect adequate progress, but the narrative says he did not meet the trials and that progress was limited. (A.R. 002765–70, 002771–74) Rather than conduct additional testing or provide JCM with a 1:1 aide, CMSD blamed his frequent absences for his lack of progress—yet did nothing to try to reduce those absences or attempt to make up services. (A.R. 001575, 001706, 001728–129). Instead, CMSD reduced his services to consultative only, rationalizing that he was no longer benefitting from direct services. (A.R. 001559–62, 001790–92, 001861–62).

The IHO offered no explanation for rejecting the Parent's request for one year of compensatory education for each year FAPE was denied. His decision contains no analysis linking the relief ordered to the extent of the deprivation, nor any rationale for concluding that the limited remedy awarded would suffice to remediate years of lost instruction. This lack of reasoning renders the order arbitrary and unsupported. While the determination that CMSD denied FAPE during multiple school years and the order for a proper FBA by a Board-Certified Behavior Analyst and 20 days of compensatory education provided some relief, the scope of the remedy must correspond to the scope of violation. The record documents four consecutive school years in which CMSD failed to evaluate, address, or provide adequate programming for JCM's significant communication, behavioral, and adaptive needs. The limited relief awarded is therefore legally insufficient and fails to satisfy the IDEA's remedial mandate.

For these reasons, the Court should award compensatory education commiserate with the ongoing denial of FAPE JCM suffered.

## IX.  CONCLUSION

Both the IHO and the SLRO correctly found that CMSD denied JCM a FAPE, but neither provided a reasoned or legally sufficient explanation for limiting the resulting remedy. Their failure to connect the relief ordered to the scope and duration of the violations contravenes the IDEA's remedial purpose and legal precedent requiring compensatory awards that fully redress lost educational opportunity.

The Court should find that CMSD failed to provide JCM with a FAPE for the 2019–20, 2020–21, 2021–22, and 2022–23 school years. The Court should order CMSD to provide compensatory education in the form of a flexible bank of hours sufficient to remedy the educational opportunity denied. In the alternative, the Court should remand the matter back to the hearing officer to calculate the appropriate amount of compensatory education. The Court should also grant further relief it deems just and proper.

Pursuant to this Court's order bifurcating the matter, the parties will submit briefing on attorneys' fees at a later date.

Respectfully submitted,

/s/ Angela Kovacs
Angela Kovacs, Esq.
Andrew K. Cuddy, Esq.
CUDDY LAW FIRM, PLLC
*Attorneys for Plaintiff*
6100 Oak Tree Blvd., Suite 200
Independence, Ohio 44131
(315) 370-4020

Date: November 3, 2025

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)

I hereby certify that my word processing program, Microsoft Word, counted 40 pages in the foregoing memorandum, exclusive of the portions excluded by Rule 32(g). The Court modified the page limit to 40 pages by order dated August 6, 2025.

/s/ Angela Kovacs
ANGELA KOVACS (0103661)
*Attorney for the Plaintiff*
Cuddy Law Firm, PLLC

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on November 3, 2025. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's systems.

<u>/s/ Angela Kovacs</u>
ANGELA KOVACS (0103661)
*Attorney for the Plaintiff*
Cuddy Law Firm, PLLC